Jordan K. Cameron **(12051)**
**CAMERON RINGWOOD, LC**
6975 South Union Park Avenue, Suite 600
Cottonwood Heights, UT 84047
Telephone: (385) 463-2425
Email: jordan@cameronringwood.com

**Attorneys for Plaintiff**

UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| APOTHECARY MOVEMENT, LLC, a Utah limited liability company,<br><br>  Plaintiff,<br><br>vs.<br><br>BH ELEGANT LINENS, LLC dbas AA WHOLESALE DEALS and SWIFT INNOVATIONS, a New York limited liability company,<br><br>  Defendants. | **AMENDED MOTION TO ADD SWIFT INNOVATIONS, LLC AND AVI ALHAKIM AS JUDGMENT DEBTORS**<br><br><br><br>Case No.: 2:23cv00845-HCN-DAO<br>Judge Howard C. Nielson, Jr. |

COMES NOW, Plaintiff, through counsel, and pursuant to Fed. R. Civ. P. 7 and 25, and respectfully submits this *Motion to Add Judgment Debtor*.

**Introduction and Requested Relief**

This matter presents a textbook case of transparent and egregious efforts by a Defendant, the Judgment Debtor, to evade collection by Plaintiff, the Judgment Creditor, and this Court should not be fooled by it. Rather, this Court should exercise its power under Fed. R. Civ. P. 25 and add Swift Innovations, LLC and Mr. Avi Alhakim as Judgment Debtors in this action.

Further, given the efforts Defendant and these parties have gone to move money out of reach of Plaintiff, this Court should order that neither dispose of any assets other than to pay the Judgment until the Judgment is paid in full.

## FACTS

1. Defendant, BH Elegant Linens, was organized by a single owner, Avi Alhakim, on November 23, 2020. (*See Declaration of Avi Alhakim*, Doc 36-2 at ¶¶ 2, 5).

2. Beginning in or around January 3, 2023, Plaintiff entered into agreement with Defendant to supply new goods to Amazon warehouses on Apothecary's behalf. (*Declaration of Asif Shaikh*, ¶ 3, Exhibit 1, hereto (hereinafter "Shaikh Decl.").

3. Pursuant to their agreement, Plaintiff would select certain new items and quantities, and pay Defendant for those items. (*Id*. at ¶ 4).

4. In or around August 2023, Amazon suspended Plaintiff's seller account and cancelled its pending sales. (*Id*. at ¶ 7).

5. Amazon took these measures after it was discovered that various sold goods supplied dy Defendant were not as advertised, and that inventory quantities were misstated. (*Id*. at ¶¶ 8-9).

6. Rather than providing new items, as was required by the Parties' agreement, Defendant supplied refurbished or used goods. (*Id*. at ¶ 10).

7. In a letter to Amazon of August 28, 2023, Defendant acknowledged fault for providing refurbished goods when Plaintiff "had only ordered new, unopened items in their original packaging." (*Id*. at ¶ 11).

8. Plaintiff has gone to great lengths to re-onboard with Amazon, including following Amazon's appeal process and retaining third-party experts to assist. Despite their attempts,

Apothecary has not been onboarded. As the result, Apothecary has lost on average $169,195 per month in revenue since August 2023. (*Id*. at ¶12).

9. On September 11, 2023, Mr. Shaikh sent a text to Mr. Avi Alhakim, the sole owner of Defendant, telling him Plaintiff was preparing a lawsuit against Defendant. (*Id*. at ¶ 13; *see also Shaikh Decl.* Exhibit A).

10. After receiving the foregoing text, on October 17, 2023, Mr. Alhakim setup a new business called Swift Innovations, LLC ("Swift") and opened a new bank account his and Swift's names with Bank of America. (*See id*. at ¶ 15; *see also Declaration of Avi Alhakim*, Doc 36-2 at ¶¶ 1, 3; *Second Declaration of Avi Alhakim*, Doc 40 at ¶ 1).

11. On October 26, 2023, counsel for Plaintiff sent a demand letter regarding this dispute to Mr. Alhakim. (*See Shaikh Decl*. at ¶ 15; *see also Shaikh Decl.* Exhibit B).

12. In the letter, Plaintiff, through counsel, notified Defendant and Mr. Alhakim that damages in this case could be anywhere between $647,097 and $1,408,484. (*See id*. at ¶ 16; *see also Shaikh Decl.* Exhibit B).

13. After receiving the demand letter, on November 3, 2023, Mr. Alhakim transferred $918,154.80 from the Defendant's bank account with Chase Bank, an account Plaintiff knew about, into the new account with Bank of America, an account Plaintiff did not know about. (*See id*. at ¶ 17; *see also Shaikh Decl.* Exhibit C).

14. On November 16, 2023, the *Complaint* was filed in this case. (*See* Doc 1).

15. On the same day, Plaintiff served the *Complaint* on Defendant at the corporate address. (*See* Doc. 8; *see also Shaikh Decl.* Exhibit D).

16. Defendant's registration record with the State of New York does not identify a registered agent or suite address, rather, it only identifies the address where process was served. (*Shaikh Decl.* at ¶ 20; *see also Shaikh Decl.* Exhibit D).

17. On December 1, 2023, Mr. Shaikh sent a text to Mr. Alhakim stating, "Hey Avi you know we have filed a complaint against you." (*See id.* at ¶ 22; *see also Shaikh Decl.* Exhibit E).

18. Mr. Alhakim ignored Mr. Shaikh, then later claimed he was out of town. (*See id.* at ¶ 23). However, on the same day, and about a week after Defendant was served with the *Summons* and *Complaint*, Mr. Alhakim filed *Articles of Dissolution* for Defendant with the State of New York. (*See id.* at ¶ 24; *see also Shaikh Decl.* Exhibit F).

19. Within a few days, Mr. Alhakim began directing Defendant's clients to pay invoices to his new account with Bank of America. (*See id.* at ¶ 25; *see also Shaikh Decl.* Exhibit G).

20. On December 14, 2023, Mr. Shaikh sent another text Mr. Alhakim telling him, "we are going to get default judgment against you today if you don't work with us." (*See id.* at ¶ 26; *see also Shaikh Decl.* Exhibit E).

21. That same day, Mr. Shaikh spoke with Mr. Alhakim on the phone. (*See id.* at ¶ 27).

22. During the call, Mr. Shaikh and Mr. Alhakim talked about the lawsuit and the fact that Plaintiff was going to get a default judgment against Defendant if Defendant did not respond. Mr. Alkhakim stated that he was aware of the lawsuit but that he did not have time to respond. Mr. Alhakim also said times were tough and that he would settle the lawsuit for $5,000. (*See id.* at ¶ 28).

23. Mr. Alhakim did not disclose the fact that he had set up a new business and account or that he had transferred all of Defendant's money into his new Bank of America account. (*See id.*

at ¶ 29). Mr. Alhakim also did not disclose that he had directed Defendant's clients to pay their invoices into the new account. (*See id.*).

24. This Court entered *Default Certificate* on December 18, 2023. (*See* Doc 14). However, this Court did not enter *Default Judgment* until months later, on Feb. 26, 2024. (*See* Doc 23).

25. On or around March 30, 2024, Plaintiff garnished the Bank of America account that received the $918,154.80 wire transfer. (*See* Doc 25).

26. However, Bank of America was only able to seize $423,312.67. (*See Declaration of Jordan Cameron*, Exhibit 2, hereto).

**ARGUMENT**

I. THIS COURT SHOULD ADD SWIFT AND AVI ALHAKIM AS JUDGMENT DEBTORS UNDER RULE 25.

Under Utah R. Civ. P. 25, the court may join a third-party as judgment debtor. *See* Utah R. Civ. P. 25; *see also Jones v. Mackey Price Thompson & Ostler*, 2020 UT 25, ¶ 91, 469 P.3d 879, 899. "The party seeking to add a successor entity need only serve the motion and any notice of hearing upon persons not parties in the manner provided in Rule 4 for the service of a summons." *Id.* (citing Utah R. Civ. P. 25(a)(1), (c)) (cleaned up). Under Rule 25, "[w]here mere substitution of a successor entity is sought, there is no requirement that the plaintiff initiate a new proceeding by service of a summons and complaint." *Jones* at ¶ 92.

The question presented through such a motion is "whether the new party is an entity to whom the original party's interest is transferred." *Jones* at ¶ 91 (citing Utah R. Civ. P. 25(c)) (cleaned up). Further, "such motion . . . may be filed after a" judgment has already entered. *See id.* (citing Utah R. Civ. P. 21). Accordingly, Rules 25 and 21 taken together "provide authority for a court to add a party to a judgment as a successor in interest to a party to the original

5

proceedings—even after" judgment has already entered. *See id*. at ¶ 91. Simply "rule 25 specifically allows for a more truncated process under the umbrella of the initial proceeding, requiring only that a party seeking to add an alleged successor 'serve the motion and any notice of hearing' under rule 4." *Id*. at 92 (citing Utah R. Civ. P. 25(a)(1), (c)).

Here, there is no genuine dispute that Swift and its sole owner, Mr. Avi Alhakim, are successors to Defendant and should be added as judgment debtors on the bases that Defendant's conduct involving Swift and Mr. Alhakim: (1) constitutes a "fraudulent conveyance to escape liability for the debts or liabilities of" Defendant ("Transfer of Interest"); and (2) results in their "becoming a continuation of" Defendant ("Mere Continuation"). *Robison v. 7PN, LLC*, 569 F. Supp. 3d 1175, 1180 (D. Utah 2021) (citing *Tabor v. Metal Ware Corp.*, 2007 UT 71, ¶ 6, 168 P.3d 814, 816).

In *Robison* this Court concluded that a reasonable inference of successor liability existed under a Mere Continuation doctrine based on the following allegations:

> 7PN is the successor to Green acting in his individual capacity and doing business as 7 Point Nutrition. 7PN is merely a continuation of Green acting in his individual capacity and doing business as 7 Point Nutrition. Green is the sole owner of 7PN, just as he was when he was acting in his individual capacity or doing business as 7 Point Nutrition. Upon information, there were no changes to the way in which Green operated his business following registration of 7PN as a Limited Liability Company. 7PN is liable for acts committed by Green acting in his individual capacity and doing business as 7 Point Nutrition.

*Robison*, 569 F. Supp. 3d at 1180.

The Transfer of Interest theory can be established following the same principles set forth "under Utah's Uniform Fraudulent Transfer Act ("UFTA")." *Hart v. Connected Wireless, Inc.*, No. 2:17-CV-186-TS, 2020 WL 6710426, at *11 (D. Utah Nov. 16, 2020).

The UFTA provides that:

6

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation ... with actual intent to hinder, delay, or defraud any creditor of the debtor.

*Id.*

> To determine 'actual intent' . . . consideration may be given, among other factors, to whether: (a) the transfer or obligation was to an insider; (b) the debtor retained possession or control of the property transferred after the transfer; . . . (d) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (e) the transfer was of substantially all the debtor's assets; . . . (i) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (j) the transfer occurred shortly before or shortly after a substantial debt was incurred; and (k) the debtor transferred the essential assets of the business . . . .

*Hart* at *11.

Here, evidence sufficient to establish successor liability under both the Mere Continuation and the Transfer of Interest theories exists in abundance.

On September 11, 2023, Mr. Alhakim, the sole owner of Defendant, was notified by Plaintiff that Plaintiff would be filing a lawsuit against Defendant. (*See Shaikh Decl.* at ¶ 13; *see also Shaikh Decl.* Exhibit A). Thereafter, Mr. Alhakim began efforts to move Defendant's assets out of Plaintiff's reach and create a false narrative that Defendant had fallen on hard times and was uncollectible.

On October 17, 2023, Mr. Alhakim took his first and second steps to evade collections and establish his false narrative: (1) He up a new business called Swift, with himself as the sole owner. (*See Shaikh Decl.* at ¶ 14; *see also* Doc 36-2 at ¶¶ 1, 3, Doc 41, Exhibit 1); (2) He opened a new bank account in his and Swift's names. (*See Shaikh Decl.* at ¶ 14; *see also* Doc 40 at ¶ 1, Doc 41, Exhibit 2).

7

On October 26, 2023, Plaintiff's attorney sent Mr. Alhakim a demand letter regarding this dispute. (*See Shaikh Decl.* at ¶ 15; *see also Shaikh Decl.* Exhibit B). In the letter, Plaintiff notified Defendant that damages in this case could be anywhere between $647,097 and $1,408,484. (*See id*. at ¶ 16; *see also Shaikh Decl.* Exhibit B).

After Mr. Alhakim received the demand letter, he took his third step to evade collections and establish his false narrative. (3) On November 3, 2023, he transferred $918,154.80 from the Defendant's bank account with Chase Bank into the new Bank of America account in his and Swift's names. (*See id*. at ¶ 17; *see also Shaikh Decl.* Exhibit C).

On November 16, 2023, Plaintiff filed the *Complaint* in this case and served Defendant. (*See* Docs 1 and 8). Then, on December 1, 2023, Mr. Shaikh sent a text to Mr. Alhakim stating, "Hey Avi you know we have filed a complaint against you." (*See Shaikh Decl.* at ¶ 22; *see also Shaikh Decl.* Exhibit E).

Mr. Alhakim ignored Mr. Shaikh, then later claimed he was out of town. (*See id*. at ¶ 23). However, on that same day, he took his fourth step to evade collections and establish his false narrative. (4) He filed *Articles of Dissolution* for Defendant with the State of New York. (*See id.* at ¶ 24; *see also Shaikh Decl.* Exhibit F).

Then, Mr. Alhakim took his fifth step to evade collections and establish his false narrative. (5) He began directing Defendant's clients to pay invoices to his new account with Bank of America. (*See id.* at ¶ 25; *see also Shaikh Decl.* Exhibit G)

On December 14, 2023, Mr. Shaikh sent another text Mr. Alhakim telling him, "we are going to get default judgment against you today if you don't work with us." (*See id.* at ¶ 26; *see also Shaikh Decl.* Exhibit E). That same day, Mr. Shaikh spoke with Mr. Alhakim on the phone.

(*See id.* at ¶ 27). During the call, Mr. Alhakim expressed his knowledge regarding the lawsuit and his obligation to respond, but, rather than responding to the lawsuit, he took his sixth step to evade collections and establish his false narrative. (6) He said times were tough, but he could settle the lawsuit for $5,000. (*See id.* at ¶ 28).

At no point did Mr. Alhakim disclose any of the foregoing evasive measures to Plaintiff.

Mr. Alhakim is the sole owner of Swift, just as he was the sole owner of Defendant. There have been no material changes to the way in which Mr. Alhakim has operated his business following registration of Swift as a Limited Liability Company. To this point, as soon as Mr. Alkahim became aware of this dispute and the amount in controversy, he simply transferred all of Defendants' money and operations from Defendant to Swift, directed Defendant's clients to pay their invoices into the new account, and conveniently dissolved Defendant entity. Thereafter he continued with business as usual. Accordingly, Swift and its sole owner, Mr. Alhakim, are mere continuations of Defendant and should be added as Judgment Debtors.

Similarly, nearly every factor considered by courts to determine an intent to evade collection through fraudulent transfer exist here. Specifically (borrowing the numbering from *Hart*): (a) Defendant transferred over $900,000 to an insider—an account in the name of Defendant's sole owner, Mr. Alhakim and his new business, Swift; (b) Defendant, through Mr. Alhakim, retained possession or control of the property and continued to augment it by directing Defendant's clients to pay their invoices into the new account; (d) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit—Plaintiff had texted Mr. Alhakim telling him to expect a lawsuit and Plaintiff's counsel had sent a demand letter to Defendant regarding the same; (e) the transfer was of substantially all the debtor's money; (i) the

debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred—the bank account showed a zero balance after the transfer, and Mr. Alhakim claimed to have fallen on hard times; (j) the transfer occurred shortly before or shortly after a substantial debt was incurred in the form of the judgment—the transfer came after Plaintiff sent demand letter identifying potential damages between $647,097 and $1,408,484 and before this Court entered judgment within that same range, in the amount of $726,394; (k) and the debtor transferred the essential assets of the business—i.e., all his cash. *See Hart*, No. 2:17-CV-186-TS, 2020 WL 6710426, at *11. Accordingly, Swift and its sole owner, Mr. Alhakim, received the transfer of interest of Defendant's collectible assets and should be added as a Judgment Debtors.

II. THIS COURT SHOULD PROHIBIT MR. ALHAKIM AND SWIFT FROM DISPOSING OF ANY ASSETS OTHER THAN TO PAY THE JUDGMENT UNTIL THE JUDGMENT IS PAID IN FULL.

On November 3, 2023, Swift and Mr. Alhakim received the transfer of $918,154.80 (enough money to satisfy the entire judgment) from Defendant's bank account into their Bank of America account. On or around March 30, 2024, Plaintiff garnished the Bank of America account that received the $918,154.80 wire transfer. However, Bank of America was only able to seize $423,312.67. (*See Declaration of Jordan Cameron*).

Accordingly, between November 3, 2023, the date of the $918,154.80 wire transfer, and the date of garnishment, Mr. Alhakim depleted the account by nearly $500,000. Such constitutes the seventh deliberate step taken by Mr. Alhakim to evade judgment and further establish his false narrative.

Based on all the efforts taken by Mr. Alhakim to evade collections and dispose of assets, good cause exists for this court to prohibit Mr. Alhakim and Swift from disposing of any assets other than to pay the Judgment until the Judgment is paid in full.

## CONCLUSION

This Court should exercise its power under Fed. R. Civ. P. 25 and add Swift and Mr. Alhakim as Judgment Debtors in this action. Further, given the efforts Defendant and these parties have gone to move money out of reach of Plaintiff, this Court should order that neither dispose of any assets other than to pay the Judgment until the Judgment is paid in full.

## CERTIFICATION

"I, Jordan Cameron, certify that this brief contains 3,007 words and complies with DUCivR 7-1(a)(4).

DATED this 25th day of April 2024.

/s/ Jordan K. Cameron
Jordan K. Cameron
*Attorney for Plaintiff*

**Certificate of Service**

   I, the undesigned, certify that on this 24th day of April 2024, I caused a true and correct copy of the foregoing to be served via ECF filing on the following:

Richard A. Kaplan
YOUNG HOFFMAN, LLC
175 South Main Street, Suite 850
Salt Lake City, UT 84111
Telephone: 801-359-1900
Email: rkaplan@yahlaw.com
*Attorneys for Swift Innovations, LLC*