Jordan K. Cameron (12051)
**CAMERON RINGWOOD, LC**
6975 South Union Park Avenue
Suite 600
Cottonwood Heights, UT 84047
Telephone: (385) 463-2425
Email: jordan@cameronringwood.com

**Attorneys for Plaintiff**

UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| APOTHECARY MOVEMENT, LLC, a Utah limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>BH ELEGANT LINENS, LLC dbas AA WHOLESALE DEALS, a New York limited liability company,<br><br>Defendants. | **OPPOSITION TO MOTION TO SET ASIDE JUDGMENT [DOC 43]**<br><br><br><br><br><br>Case No.: 2:23cv00845-HCN-DAO<br>Judge Howard C. Nielson, Jr. |

COMES NOW, Plaintiff, through counsel, and respectfully submits this *Opposition* to the Defendant's *Motion to Set Aside Judgment* [Doc 43].

## INTRODUCTION

Since Defendant was first warned that a lawsuit would be filed against it in September 2023, it has engaged in a concerted and intentional effort to move, hide, and evade.[1] This *Motion*

---

[1] Curiously, through other *Motions*, Defendant has taken the position that it is distinct from Swift Innovations. However, in this *Motion*, Defendant uses the terms "BH" and "Swift" interchangeably. For example, Defendant argues "BH did not receive service of the summons

is simply another step in Defendant's ongoing ruse perpetuated through its sole owner, Mr. Avi Alhakim. As with the other attempts, the *Motion* falls far short as Defendant has failed to meet its burden under Rule 60 to vacate the judgment.

The available evidence compels that conclusion that, rather than answering the *Complaint*, Defendant engaged in an intentional and concerted effort to evade collection by moving its assets out of reach of Plaintiff and disposing of cash as quickly as possible. Setting aside a judgment on these facts would reward Defendant's unclean hands and allow Defendant to continue to dispose of assets, thereby ensuring that Plaintiff will never collect for the wrongs committed against it.

Accordingly, this Court should dismiss the *Motion*.

**FACTS**

1. Defendant, BH Elegant Linens, was organized by a single owner, Avi Alhakim, on November 23, 2020. (*See Declaration of Avi Alhakim*, Doc 36-2 at ¶¶ 2, 5).

2. Beginning in or around January 3, 2023, Plaintiff entered into agreement with Defendant to supply new goods to Amazon warehouses on Apothecary's behalf. (*Declaration of Asif Shaikh*, Doc 45-1 at ¶ 3) (hereinafter "Shaikh Decl.").

3. In or around August 2023, Amazon suspended Plaintiff's seller account and cancelled its pending sales. (*Id.* at ¶ 7).

---

and complaint" but also states, "lack of service on Swift means the Court never had jurisdiction over Swift."

4. Amazon took these measures after it was discovered that various goods supplied by Defendant were not as advertised, and that inventory quantities were misstated. (*See id*. at ¶¶ 8-9).

5. Rather than providing new items, as was required by the Parties' agreement, Defendant supplied refurbished or used goods. (*Id*. at ¶ 10).

6. In a letter to Amazon of August 28, 2023, Defendant acknowledged fault for providing refurbished goods when Plaintiff "had only ordered new, unopened items in their original packaging." (*Id*. at ¶ 11).

7. Plaintiff has gone to great lengths to re-onboard with Amazon, including following Amazon's appeal process and retaining third-party experts to assist. Despite their attempts, Apothecary has not been onboarded. As the result, Apothecary has lost on average $169,195 per month in net revenue since August 2023. (*Id*. at ¶12).

8. On September 11, 2023, Mr. Shaikh sent a text to Mr. Avi Alhakim, the sole owner of Defendant, telling him Plaintiff was preparing a lawsuit against Defendant. (*Id*. at ¶ 13; *see also Shaikh Decl.* Exhibit A).

9. After receiving the foregoing text, on October 17, 2023, Mr. Alhakim setup a new business called Swift Innovations, LLC and opened a new bank account in his and Swift Innovations names with Bank of America. (*See id*. at ¶ 15; *see also Declaration of Avi Alhakim*, Doc 36-2 at ¶¶ 1, 3; *Second Declaration of Avi Alhakim*, Doc 40 at ¶ 1).

10. On October 26, 2023, counsel for Plaintiff sent a demand letter regarding this dispute to Mr. Alhakim. (*See Shaikh Decl*. at ¶ 15; *see also Shaikh Decl.* Exhibit B).

11. In the letter, Plaintiff, through counsel, notified Defendant and Mr. Alhakim that damages in this case could be anywhere between $647,097 and $1,408,484. (*See id*. at ¶ 16; *see also Shaikh Decl.* Exhibit B).

12. After receiving the demand letter, on November 3, 2023, Mr. Alhakim transferred $918,154.80 from the Defendant's bank account with Chase Bank, an account Plaintiff knew about, into the new account in Mr. Alhakim and Swift Innovations' names, an account Plaintiff did not know about. (*See id*. at ¶ 17; *see also Shaikh Decl.* Exhibit C).

13. On November 16, 2023, the *Complaint* was filed in this case. (*See* Doc 1).

14. On the same day, Plaintiff served the *Complaint* on Defendant at the corporate address. (*See* Doc. 8; *see also Shaikh Decl.* Exhibit D). There is only one door and a person at the front desk who knows the identity of the occupants and interacts with them. (*Shaikh Decl.* at ¶ 21).

15. Defendant's registration record with the State of New York does not identify a registered agent or suite address, rather, it only identifies the address where process was served. (*Shaikh Decl.* at ¶ 20; *see also Shaikh Decl.* Exhibit D).

16. In serving the *Summons* and *Complaint*, the process server delivered the documents to an individual who identified himself as the person authorized to accept service for Defendant. The individual accepted service with direct delivery. The individual appeared to be a brown-haired white male contact 35-45 years of age, 5'8"-5'10" tall and weighing 180-200 lbs with an accent. (*See* Service Report, Exhibit A, hereto).

17. On December 1, 2023, Mr. Shaikh sent a text to Mr. Alhakim stating, "Hey Avi you know we have filed a complaint against you." (*See id*. at ¶ 22; *see also Shaikh Decl.* Exhibit E).

4

18. Mr. Alhakim ignored Mr. Shaikh, then later claimed he was out of town. (*See id*. at ¶ 23). However, on the same day, and about a week after Defendant was served with the *Summons* and *Complaint*, Mr. Alhakim filed *Articles of Dissolution* for Defendant with the State of New York. (*See id.* at ¶ 24; *see also Shaikh Decl.* Exhibit F).

19. Within a few days, Mr. Alhakim began directing Defendant's clients to pay invoices to his new account with Bank of America. (*See id.* at ¶ 25; *see also Shaikh Decl.* Exhibit G).

20. On December 14, 2023, Mr. Shaikh sent another text Mr. Alhakim telling him, "we are going to get default judgment against you today if you don't work with us." (*See id.* at ¶ 26; *see also Shaikh Decl.* Exhibit E).

21. That same day, Mr. Shaikh spoke with Mr. Alhakim on the phone. (*See id.* at ¶ 27).

22. During the call, Mr. Shaikh and Mr. Alhakim talked about the lawsuit and the fact that Plaintiff was going to get a default judgment against Defendant if Defendant did not respond. Mr. Alkhakim stated that he was aware of the lawsuit but that he did not have time to respond. Mr. Alhakim also said times were tough and that he would settle the lawsuit for $5,000. (*See id.* at ¶ 28).

23. This Court entered *Default Certificate* on December 18, 2023. (*See* Doc 14).

24. This Court did not enter Default Judgment until months later, on Feb. 26, 2024. (*See* Doc 23).

25. Despite being served with the *Summons* and *Complaint*, and despite being notified multiple times regarding the lawsuit and the fact that default would enter, Defendant never responded to the *Complaint*.

## ARGUMENT

I.  PLAINTIFF FAILS TO SATISFY ITS BURDEN TO VACATE A JUDGMENT UNDER RULE 60(b)(4).

"Rule 60(b)(4) authorizes the court to relieve a party from a final judgment if the judgment is void." *Johnson v. Spencer*, 950 F.3d 680, 694 (10th Cir. 2020) (citing *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270, 130 S.Ct. 1367, 176 L.Ed.2d 158 (2010) (cleaned up). However, "[a] judgment is void under Rule 60(b)(4) only in the rare instance where the judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard." *Id*. (citing *Espinosa*, 559 U.S. at 271, 130 S.Ct. 1367) (cleaned up). No such error exists here.

Moreover, on a Rule 60(b)(4) challenge, Federal courts "generally have reserved relief only for the exceptional case in which the court that rendered judgment lacked even an 'arguable basis' for jurisdiction." *Id*. at ¶ 697 (citing *Espinosa*, 559 U.S. at 271, 130 S.Ct. 1367).[2] Where, as is the case here, "the district court had at least an arguable basis to exercise jurisdiction" a judgment stands. *Id*. at 695.

Defendant's only argument under Rule 60(b)(4) is that it was not served. But Defendant lacks credibility, and this argument is belied by the evidence available in this case. Further, based

---

[2] *Accord Gschwind v. Cessna Aircraft Co.*, 232 F.3d 1342, 1346 (10th Cir. 2000) ("There must be 'no arguable basis on which [the court] could have rested a finding that it had jurisdiction.' " (alteration in original) (quoting *Nemaizer v. Baker*, 793 F.2d 58, 65 (2d Cir. 1986))); *Baella-Silva v. Hulsey*, 454 F.3d 5, 9–10 (1st Cir. 2006) ("[I]f the record supports an 'arguable basis' for concluding that subject-matter jurisdiction existed, a final judgment cannot be collaterally attacked as void." (quoting *Fafel v. DiPaola*, 399 F.3d 403, 411 (1st Cir. 2005))); *cf.* 18A Charles Alan Wright et al., Federal Practice and Procedure § 4427, Westlaw (database updated Aug. 2019) ("For the most part, a judgment entered by a federal court acting beyond its subject-matter jurisdiction remains eligible for res judicata effects if there is no other defect ....").

on the evidence presented, this Court has "at least an arguable basis for jurisdiction" and the judgment must stand.

It is well settled that a plaintiff is only required to attempt service at the address given and need not make any attempt to serve the defendant elsewhere. *See Speed of Light Ops, LLC v. Elliot*, No. 222CV00246DAKDBP, 2022 WL 2702645, at *1 (D. Utah July 12, 2022); *Allergy Rsch. Grp. LLC v. Andic*, No. 222CV00249HCNCMR, 2022 WL 2905514, at *1 (D. Utah July 22, 2022); *Dansk Express, LLC v. IPFS Corp.*, No. 01-22-00621-CV, 2023 WL 4937497, at *6 (Tex. App. Aug. 3, 2023). Further to this point, "a diligent party may rely on the registered address a limited liability company has placed on file with the Secretary of State." *Dansk Express,* at *6 (cleaned up).

Here, Defendant has one address—the address where it was served. It is the address listed in the corporate records filed with the State of New York. (*See* Facts 14-15). The building has one door and a person at the front desk who knows the identity of the occupants and interacts with them. (*See id*.).

Defendant did not provide a suite number or a registered agent in its filings with the Secretary of State. (*See* Fact 15). Now, Defendant claims the person served at its address was not authorized to accept service. However, "the failure of a corporate defendant to receive service of process due to breach of the obligation to keep [accurate or complete information] on file with the Secretary of State does not constitute a reasonable excuse." *Wright v. Shenandoah Investors, LLC*, No. 155007/2022, 2023 WL 3147158, at *1 (N.Y. Sup. Ct. Apr. 28, 2023) (cleaned up). Simply, because Defendant did not identify a suite number or registered agent, it cannot complain that it was not served when the *Summons* and *Complaint* were personally delivered at

7

its address, nor does such provide a basis for the court to "excuse the [Defendant's] nonresponse." *Id*.

In fact, the person served stated that he was authorized to accept service for Defendant. (*See* Fact 16). Plaintiff is entitled to rely on this regardless of whether Joe Cohen is a true or false name.

Defendant's argument is not new to this Court. In *Position Logic, LLC v. Pat. Licensing All., LLC*,

> Plaintiff attempted to effectuate service of process by leaving the summons and Complaint with a receptionist at Pia Anderson. While Pia Anderson was PLA's registered agent, there is no evidence that the receptionist was an officer, manager or general agent, or an agent authorized to receive service of process. Indeed, in her declaration, Ms. Furner states that she was not authorized to accept service and that she so informed the process server.

No. 2:16-CV-1288 TS, 2017 WL 1136959, at *2 (D. Utah Mar. 27, 2017).

This Court reasoned, "[e]ven if Ms. Furner was not authorized to accept service of process . . . someone at Pia Anderson was. The fact that no one at Pia Anderson made any such attempts to accept service is of concern to the Court. Utah Rule of Civil Procedure 4(d)(3)(A) states that '[a]ll parties have a duty to avoid unnecessary expenses of serving the summons and complaint.'" *Position Logic, LLC v. Pat. Licensing All., LLC*, No. 2:16-CV-1288 TS, 2017 WL 1136959, at *2 (D. Utah Mar. 27, 2017)

Even if it were true that the individual served was not authorized to receive service (which is belied by the facts), someone at Defendant's address was, and given that Defendant was put on notice that the lawsuit before it was filed (*see* Facts 8-13), Defendant had a duty to attempt to receive service. Of course, the evidence compels the conclusion (or at the very least provides an "arguable basis") that Defendant was served.

8

Moreover, where a party receives "actual notice [of the dispute], we hold that service of process was accomplished." *Kitchens v. Bryan Cnty. Nat. Bank*, 825 F.2d 248, 257 (10th Cir. 1987). Here, there is not genuine dispute regarding actual notice. In addition to serving Defendant at its corporate address, Plaintiff provided additional notice of the lawsuit to Defendant, and confirmed with the Defendant telephonically that Defendant was aware of the suit. (*See* Fact 21-22). Further, Plaintiff warned Defendant that default would enter, and still, Defendant ignored the *Complaint*. (*See* Fact 20). On their phone call regarding this case, Defendant acknowledged that he was aware of it. (*See* Facts 21-22). As in *Kitchens*, "it is a virtual certainty that the defendants received actual notice." *Kitchens*, 825 F.2d at 256.

On this basis, this Court should deny the *Motion*.

II.  DEFENDANT'S RELIANCE ON RULE 60(B)(6) FAILS

"Rule 60(b)(6) allows federal courts to relieve a party from a judgment for any reason . . . that justifies relief." *Johnson*, 950 F.3d at 700 (citing Fed. R. Civ. P. 60(b)(6)). However, "relief under Rule 60(b)(6) is extraordinary and reserved for exceptional circumstances . . . ." *McGraw v. Barnhart*, 450 F.3d 493, 505 (10th Cir. 2006). No extraordinary circumstances exist here.

It appears Defendant's argument under Rule 60(b)(6) is that "the amount of default judgment dwarfs anything BH could conceivably have contemplated." (*Motion* at 4-5). While citing no precedent for this position as an available basis to vacate a judgment, the position is also easily disproved. Moreover, "the broad power granted by Rule 60(b)(6) is not for the purpose of relieving a party from free, calculated, and deliberate choices the party has made . . . ." *Johnson*, 950 F.3d at 702 (citing 11 Wright et al., *supra*, § 2864; *accord Cashner*, 98 F.3d at 580). The sort of "free, calculated, and deliberate choices that may undermine a party's request

9

for Rule 60(b)(6) relief are . . . the party's regretted decision . . . ." *Johnson*, 950 F.3d at 703 (citing *Ackermann v. United States*, 340 U.S. 193, 197–98 (1950)).

Here, prior to filing its lawsuit, Plaintiff sent demand letter to Defendant which stated that damages for Defendant's wrong could be anywhere between $647,097 and $1,408,484. (Cite). Thereafter, in the *Complaint*, Plaintiff alleged that "as the proximate result of Defendant's breach of contract, Plaintiff's Amazon account was terminated. Beginning in late August, 2023, Plaintiff has lost at least $169,195 in monthly profits." (*Compl.* at ¶ 32). The judgment that entered in this case was on the low end of what Plaintiff estimated in its demand letter. For Defendant to now claim that it could not fathom such a high damage award is disingenuous and certainly not the extraordinary circumstances for relief under Rule 60(b)(6).

Moreover, shortly after receiving the demand letter, Mr. Alhakim transferred $918,154.80 from the Defendant's bank account with Chase Bank into a new account Plaintiff did not know about. (*See* Fact 12). These actions are not consistent with someone who could not fathom a damage award of the size of the judgment. Rather, the actions are consistent with someone who knew a judgment was imminent and did all he could be hide money.

After receiving the *Complaint*, Defendant, believing he had cleverly closed his business and hidden all assets, made the deliberate choice to ignore it. It was not until Plaintiff garnished Defendant's hidden account that Defendant began to conjure a tale of lack of service. However, Rule 60 does not save Defendant from its deliberate choices that it has come to regret.

## CONCLUSION

Based on the foregoing, this Court should deny the *Motion*.

DATED this 6th day of May 2024.

/s/ Jordan K. Cameron  
Jordan K. Cameron  
*Attorney for Plaintiff*

## Certificate of Service

I, the undesigned, certify that on this 6th day of May 2024, I caused a true and correct copy of the foregoing to be served via ECF filing on the following:

Richard A. Kaplan
YOUNG HOFFMAN, LLC
175 South Main Street, Suite 850
Salt Lake City, UT 84111
Telephone: 801-359-1900
Email: rkaplan@yahlaw.com
*Attorneys for Swift Innovations, LLC*