Richard A. Kaplan
YOUNG HOFFMAN, LLC
175 South Main Street, Suite 850
Salt Lake City, UT 84111
Telephone: 801-359-1900
Email: rkaplan@yahlaw.com
*Attorneys for BH Elegant Linens, LLC,
d/b/AA Wholesale Deals; Swift Innovations,
LLC; and Avi Alhakim*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| APOTHECARY MOVEMENT, LLC, a Utah limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>BH ELEGANT LINENS, LLC dba AA WHOLESALE DEALS; a New York limited liability company,<br><br>Defendants. | **REPLY MEMORANDUM IN SUPPORT OF MOTION TO SET ASIDE JUDGMENT AGAINST BH ELEGANT LINENS, LLC**<br><br>Civil No. 2:23-cv-00845-HCN-DAO<br><br>Judge Howard C. Nielson, Jr. |

Putative Defendant/Judgment Debtor BH Elegant Linens, LLC, dba AA Wholesalers, by and through counsel, Richard A. Kaplan of YOUNG HOFFMAN, LLC, appearing for the limited purpose of contesting personal jurisdiction, respectfully submits to the Court this Reply Memorandum in Support of BH's Motion To Set Aside Default Judgment.  In its opening brief, BH showed that the Default Judgment against it must be vacated as void for lack of personal jurisdiction because BH was not properly served with the Summons and Complaint.  That was so essentially because the Proof of Service [Docket   ] identifies as the person who accepted service a random person the Process Servicer ;a The Default Judgment should not have been issued on

the basis of Mr. Cameron's Declaration for lack of first-hand knowledge or computational certainty sufficient to satisfy the requirements of Rule 55 (b) (1). Furthermore, as elaborated below, the Default Judgment was grossly excessive as demonstrated by Plaintiff's own Declaration filed last week. Thus, in addition to the flawed issuance, the Judgment should be set aside on the basis of newly discovered evidence of fraud, as void for lack of personal jurisdiction over BH, and for the manifest injustice that would result if Plaintiff were able to collect on this Default Judgment under all the facts and circumstances. Rules 60 (1), (3), (4) and (6), Fed. R. Civ. Pro.

## Facts

1. Avi Alhakim was the sole member and manager of BH at all material times. Third Alhakim Declaration, Exhibit A, ¶ 2.

2. Mr. Alhakim is twenty-three years old and a graduate of high school. Apart from this case, he has never been involved in litigation as a plaintiff or defendant and had no experience with or knowledge of legal terminology such as "Summons" or "Complaint" or "Default Judgment." Id., ¶ 3

3. BH purchased and sold wholesale to Amazon sellers, such as Plaintiff, a variety of consumer merchandise. Plaintiff in turn sold the merchandise on its Amazon "store", under the dba "NaqshBeauty". Id., ¶ 4.

4. In August 2023 Asif Shaikh, Plaintiff's principal, contacted Mr. Alhakim by phone to say that some of the goods Mr. Alhakim had recently shipped to Amazon on Plaintiff's account and for its store were new and in original packaging but some were not. The items Mr. Shaikh spoke about were Netgear Modems and Kalorik Fryers. Id., ¶ 5.

5. Amazon shipped the merchandise that wasn't new or in original packaging back to Plaintiff who in turn returned it to BH. Mr. Alhakim provided a full refund to Plaintiff for the units Plaintiff returned. Id., ¶ 6

6. Mr. Shaikh told Mr. Alhakim also that Amazon had suspended Plaintiff's store. Mr. Shaikh asked Mr. Alhakim if he would help with Amazon by sending a letter of apology and Mr. Alhakim did that on August 28, 2023. Id., ¶ 7.

7. Over the next few months, Mr. Shaikh claimed to have losses resulting from the suspension of Plaintiff's Amazon store and proposed by text message that Mr. Alhakim pay him $30,000 in full settlement.[1] Id., ¶ 8 and Exhibit 1 to the Third Alhakim Declaration, Attachment A.

8. Mr. Alhakim did not believe the merchandise Plaintiff returned to him was the reason why Amazon had suspended Plaintiff's Amazon store. For one thing, he asked Mr. Shaikh on multiple occasions to show him any communication from Amazon imposing or explaining the suspension and Plaintiff would not.[2] In fact Plaintiff to this day has produced no evidence of any kind to connect Plaintiff's merchandise with the suspension other to say that "Amazon took these measures [suspension and cancellation of orders] "**after** it was discovered that **various** sold goods were not as advertised, and that inventory quantities were misstated." Shaikh Decl, ¶ 9 (emphasis supplied); and Mr. Shaikh's own say so: "The goods in question were distributed by Defendant." Id., ¶ 10.

---

[1] Undersigned counsel would not normally use settlement negotiations but Plaintiff's Affidavit and recent Motion to Add Mr. Alhakim as a Judgment Debtor both cite settlement discussions and a demand letter and thus open the door.

[2]

9. Significantly, Plaintiff's store page received other complaints from consumers about other products in the two months before the suspension was imposed. In posted "Reviews," complained that goods they purchased from Plaintiff were not what they ordered, had expired, or were counterfeit. For example, "I ordered the collagen WITHOUT BIOTIN AND RECEIVED WITH BIOTIN!!! **Wrong grams different quantity!** Allergies to Biotin and can't take it! **Won't refund money, but thanks to Amazon I got a refund!** Let's get it right next time!" By Amazon Customer on June 8, 2023 (emphasis supplied); I paid for a 5 lbs and they sent me a small one" By Roberto Alonso on July 3, 2023; "Product is **expired** by Jun 2023 a week later after delivery on 24 May 2023, how can it be consumed 90 days of serving in a week. A common seller will not sell such product out, it is a very unpleasant experience which I **never encounter** for purchasing supplements. Sold by NaqshBeauty." By MarsSpecter on June 6, 2023 (emphasis supplied); I placed my order for Reserveage 500 mg on May 28, 2023. "I received my order for for product yesterday. The **expiration date** on the bottle says June 2023. Why would you send me a product that expires before I can use it?! By Greg G. on June 1, 2023; "I received the prenatal DHA not the basic prenatal. An **added barcode label placed on the bottle by seller** says 'basic prenatal' but the bottle is the prenatal DHA . Please investigate …." By Victoria on May 24, 2023; "**NOT GENUINE PRODUCT, MADE ME SICK. FLAG THIS SELLER.**" By

Hope this helps on June 7, 2023. Third Avakim Declaration. ¶ 11.

10. Mr. Alhakim countered at $5,000 and expected to resolve the matter somewhere in the middle. Id., ¶ 12.

11. When Mr. Alhakim received a text from Mr. Shaikh threatening a lawsuit and another text threatening a default judgment (see texts set forth in Shaikh Decl.), Mr. Alhakim considered those texts nothing more than a negotiating tactic intended to scare him and thereby force a settlement. He believed the parties were still negotiating.  He did not know what a "default judgment" was.  When he received a letter from Plaintiff's counsel [Docket 46-1 at p.2] asserting that BH's damages from the suspension were already **$393,304**, would likely amount to somewhere between **$647,097 and $1,408,484**, could amount to more than $1.4 million and **requesting that Mr. Alhakim enter into "negotiation in good faith**," (emphasis supplied), Mr. Alhakim considered the letter itself as written in bad faith and saw no point in a negotiation over dollar amounts 13 to 40 times what Plaintiff himself had suggested.  Third Alhakim Decl.,¶ 13.

12. Mr. Alhakim did not actually see the Summons and Complaint until after he received notice from Bank of America that his account there had been frozen on or around March 29, 2024.  See [First] Declaration of Avi Alhakim in Support of Swift Innovation, LLC's Motion to Set Aside Default Judgment insofar as it applies to Swift Innovations, LLC [Docket    ].  Also, contrary to Mr. Shaikh's Declaration, Mr. Alhakim was not "aware" of the lawsuit before March 30, 2024 and did not tell Mr. Shaikh otherwise. Furthermore, as stated in Mr. Alhakim's [First] Declaration [Docket    ], "Joe Cohen" is not someone he knows and was never authorized to receive or accept service for BH.  In that regard, Mr. Shaikh's recollection of the building where BH operated its business is mistaken and perhaps confused with another.  This building is a warehouse used by multiple businesses; there is no front desk, and there is no employee of the building on site most of the time.  Third Alhakim Decl., ¶ 14.

13. According to the Docket, Plaintiff's counsel submitted a Declaration in support of Motion for Default Judgment in which counsel asserted that "the Complaint identifies **losses** [among others] in the monthly amount of **$169,195** since August 2023." [Docket 15 (emphasis added).

14. On that basis, Plaintiff obtained a Default Judgment against BH in the amount of $726,394, the bulk of which consisted of $676,780 representing four months of the asserted monthly losses. Id. Plaintiff also obtained Writs of Garnishment referencing the amount of the Default Judgment {Docket Nos.    ], served a document subpoena on Chase and BOA for BH and Swift Innovation, LLC account information respectively.

15. Counsel's Declaration in support of the Motion for Default Judgment offered nothing to substantiate asserted "monthly losses" of $169,175. Docket 15.

16. Counsel's own client contradicted that assertion last week in Docket 46-1.

17. Thus, in his own Declaration, Id., filed last week  support of Plaintiff's Amended Motion to Add Judgment Debtors [Docket 46}, Plaintiff's Mr. Shaikh states unequivocally that "Apothecary has lost on **average** $169,195 per month in **revenue** since August 2023. Id., ¶ 12 (emphasis added); Mr. Shaikh also necessarily admits he had expenses, more particularly costs of goods sold, in connection with those Revenues. Id., ¶ 4 (Plaintiff **"pa[id Defendant]** for those items") Id.. ¶ 4 (emphasis added).   While without discovery BH can only speculate at this point about Plaintiff's margins and net monthly income, it is fair to suggest that in the end his monthly income was likely a fraction of his revenues as is the case for all or virtually all businesses that sell goods.

**Discussion**

On this record, the Default Judgment Plaintiff obtained against BH must be set aside. First, it is well established in this Circuit and throughout the Circuits that a Default Judgment is void within the meaning of Rule 60 (b) (4) when, as here, there was no service of process and therefore no personal jurisdiction.  See generally cases and arguments cited in Swift Innovations, LLC's Motion to Set Aside Default Judgment {Docket   }.

Moreover, to the extent the Court may determine that it could not resolve the jurisdiction issue without an evidentiary hearing, no such hearing is needed to set aside the Default Judgment based on three grounds that are separate and independent from the jurisdiction issue.  These are: (1) newly discovered evidence under Rule 60 (b) (1); "fraud" as defined in Rule 60 (b) (3); and sufficient other justification under Rule 60 (b) (6).

When, as here, newly discovered evidence is unambiguous and raises serious and substantial questions about the computations underlying a Default Judgment, such that the amount of the judgment may be grossly inflated, the case should be reopened to permit discovery and, as courts prefer, to "decide the case on the merits rather than on a "technicality."  At a minimum, Mr. Shaik's unequivocal reference to "revenue" as the basis for his asserted monthly losses raises serious and substantial questions about what his actionable losses actually are that cry out for discovery prior to resolution as a matter of basic fairness and justice.   These are precisely the kind of circumstances warranting reopening the case under Rule 60 (b) (1)  and (6).

Put differently, the Shaikh Declaration itself supports a finding that BH has a "meritorious defense" insofar as the amount of damages is concerned.  And the Reviews of Plaintiff's products discussed in the Alhakim Declaration at least objectively suggest that BH

may havea meritorious defense in respect of liability and damages as well.  Plaintiff's refusal to disclose its communications with Amazon supports that conclusion.  A showing of a likely "meritorious defense" is one of the most significant factors driving court decisions granting a motion to set aside a default judgment based on "newly discovered evidence or when considering whether relief is justified for "any other reason under 60 (b) (1) (6).

Most basically, Mr. Shaikh himself has established that the Default Judgment was procured through "fraud" as that term is defined in the rule.  The clerk issuing the Default Judgment had no information on which to question the veracity of Counsel's Declaration regarding Plaintiff's alleged "losses".  Now we do.  The use of the word "losses" was at best a misrepresentation and at worst a fraudulent sleight of hand.  Regardless, Rule 60 (b) (1) (3) applies and the judgment must be set aside.

By the same token, it is abundantly clear that the Writs of Garnishment should never have been issued in the amount of the fatally flawed Default Judgment, if they should have been issued at all, and for all of these reasons the Writs should be vacated forthwith.

Dated this 15th day of May, 2024.

       /s/ Richard A. Kaplan
Richard A. Kaplan
YOUNG HOFFMAN, LLC
*Attorneys for BH Elegant Linens, LLC,
d/b/AA Wholesale Deals; Swift Innovations,
LLC; and Avi Alhakim*

## CERTIFICATE OF SERVICE

I certify that on this 15th day of May, 2024, I caused a true copy of the foregoing **Reply Memorandum in Support of Motion to Set Aside Judgment Against BH Elegant Linens, LLC** to be served via the court's electronic filing system upon the following:

>Jordan K. Cameron
>jordan@cameronringwood.com
>CAMERON RINGWOOD, LC
>6975 South Union Park Avenue, Suite 600
>Cottonwood Heights, UT 84047
>*Attorneys for Apothecary Movement, LLC*

                                      */s/ Echo Peterson*
                                      Echo Peterson