Richard A. Kaplan
Young Hoffman, LLC
175 South Main Street, Suite 850
Salt Lake City, UT 84111
Telephone: 801-359-1900
Email: rkaplan@yahlaw.com
*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| APOTHECARY MOVEMENT, LLC, a Utah limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>BH ELEGANT LINENS, LLC dba AA WHOLESALE DEALS; a New York limited liability company,<br><br>Defendants. | **BH ELEGANT LINENS, LLC'S MOTION TO DISMISS FOR LACK OF JURISDICATION; and**<br><br>**NONPARTIES SWIFT INNOVATIONS, LLC and AVI ALHAKIM'S MOTION FOR DECLARATION THAT COURT LACKS JURISDICTION**<br><br>**AND REQUEST FOR ORAL ARGUMENT**<br><br>Civil No. 2:23-cv-00845-HCN-DAO<br><br>Judge Howard C. Nielson, Jr. |

Comes now Defendant BH Elegant Linens, LLC, dba AA Wholesalers ("BH"), and Nonparties Swift Innovations, LLC ("Swift") and Avi Alhakim, by and through counsel, Richard A. Kaplan of Young Hoffman, LLC, appearing for the limited purpose of contesting personal jurisdiction, who respectfully submit this combined Motion and Memorandum concerning issues of personal jurisdiction and requesting Oral Argument. More particularly, BH moves for dismissal for lack of jurisdiction due to insufficiency of service and insufficient contacts with the State of Utah to establish personal jurisdiction; nonparties Swift and Alhakim seek a declaration

that the Court cannot take any action with respect to either of them because they have not been served with a summons and complaint as the law requires and because each of them lacks sufficient contacts with the State of Utah for the Court to assert authority over either of them.[1] In all three cases the grounds for the requested relief are thus lack of personal service and lack of constitutional jurisdiction. The motions are combined because they involve common facts and legal issues, but if the Court prefers, undersigned counsel will of course separate them and refile them individually.

The combined Motions, if granted, would vacate the Certificate of Default and the Default Judgment against BH (to the extent the latter has not been extinguished by the Court's Order in Docket 50). In addition, granting the combined Motion would moot all pending motions, including BH's Amended Motion to Set Aside the Judgment and for Return of Improperly Garnished Funds, as well as Plaintiff's Motion For Reconsideration of Docket Text Order 50 as it relates to the Court's decision to vacate the writs and Plaintiff's Amended Motion to Alter Judgment to Add as Judgment Debtors Swift Innovations, LLC and Avi Alhakim.

## FACTS

1. Plaintiff Apothecary Movement, LLC, is a Utah limited liability company.

2. Defendant BH Elegant Linens, LLC ("BH"), was a New York limited liability company when it engaged in several transactions with Plaintiff.

3. When process was purportedly served in this case, BH's designated agent for accepting service of process was the Secretary of State of the State of New York. See Exhibit 1

---

[1] There is a live controversy on these points since Plaintiff has moved to join Swift and Alhakim as judgment debtors.

to the Declaration of Avi Alhakim in support of Motion to Dismiss ("Alhakim Decl. Dismissal"), attached as Exhibit A.

4. BH's registered place of business was the county of Kings, NY. See Exh. 1.

5. BH also had a place of business at 55 Talmadge Road in Edison New Jersey at the time service was purportedly made in this lawsuit. Alhakim Decl. Dismissal, ¶ 2.

6. Save for its sales to Plaintiff, BH never conducted business operations in Utah; nor was BH ever licensed to do business in the State of Utah. Id., ¶ 3.

7. BH never owned, leased, or controlled property (real or personal) and never had assets of any kind in the State of Utah. Id., ¶ 4.

8. BH never maintained employees, offices, agents, or bank accounts in the State of Utah. Id., ¶ 5

9. No BH member resides or resided in the State of Utah. Id., ¶ 6.

10. BH maintained no phone or fax listings in Utah. Id., ¶ 7.

11. BH never advertised or solicited business in the State of Utah. Id., ¶ 8.

12. BH never travelled to Utah by way of salespersons or otherwise. Id., ¶ 9.

13. BH never paid taxes in Utah. Id., ¶ 10

14. BH never visited potential customers in Utah. Id., ¶ 11.

15. BH never recruited employees in Utah. Id., ¶ 12.

16. Nonparty Swift Innovations, LLC ("Swift"), is a New Jersey limited liability company. Plaintiff alleged in both its first Amended Complaint [Docket 19, ¶ 2] and its Second Amended Complaint [Docket 21, ¶ 2] that "Swift Innovations" is a d/b/a of BH.

17. Plaintiff has not offered any evidence that nonparty Swift does business or has assets, or contacts whatsoever with the State of Utah. Swift does not. Alhakim Decl. Dismissal, ¶ 13.

18. Nonparty Avi Alhakim ("Alhakim") is a citizen and resident of the State of New York. Plaintiff alleged in both its first Amended Complaint [Docket 19, ¶ 2] and its Second Amended Complaint [Docket 21, ¶ 2] that BH is the "alter ego" of Mr. Alhakim

19. Plaintiff has maintained in multiple pleadings that BH transferred funds, not an ownership interest, to Swift's bank account at Bank of America. E.g., Notice of Interpleader, Doc 51, at 5.

20. Asif Shaikh, Apothecary's principal, reached out to Alhakim in 2022, for the purpose of establishing a business relationship with BH. Shaikh sought to sell BH's products, among many others, on Apothecary's Amazon storefront. See Exhibit 2 to Alhakim Decl. Dismissal.

21. At one point Mr. Shaikh visited the warehouse on Talmadge Road in which BH had its office. Decl. of Asif Shaikh ("Shaikh Decl.") (attachment to Docket 46), ¶¶ 19 and 21.

22. Mr. Alhakim has never visited Plaintiff's offices in Utah. In fact, Mr. Alhakim has never visited Utah for business or for pleasure, or on behalf of BH or Swift. Alhakim Decl. Dismissal, ¶ 15.

23. Mr. Alhakim has never done business in his own right in Utah. *Id*. ¶ 16.

24. Mr. Alhakim has no residence, office, or relatives in the State of Utah. *Id*. ¶ 17.

25. BH did not solicit Plaintiff's business. It was the other way around. Plaintiff contacted Mr. Alhakim through Whatsapp to ask whether BH sold wholesale merchandise.

Alhakim Decl. Dismissal, ¶ 18 and attachment (images of Mr. Shaikh's inquiry and Mr. Alhakim's reply).

26. Beginning in early 2023, BH began supplying various merchandise to Amazon Warehouses around the country on behalf of Plaintiff.

27. Mr. Alhakim has searched his files for Plaintiff's orders and shipment directions. There are four orders involving allegedly non-conforming products at issue in this case and all of them were shipped on Plaintiff's instructions, together with Amazon shipping labels, to Amazon warehouses in States other than Utah, more particularly, to New Jersey (Exhs. 3 and 6); to Pennsylvania (Exh. 4); and to Arizona (Exh. 5). Id., ¶ 19.

28. During the first eight months of 2023, the period during which problems arose relating to the four orders at issue, Plaintiff had significant issues involving vendors other than BH. Exhibit 7 to the Alhakim Decl. Dismissal is a five-page single-spaced list of negative customer reviews that appeared on Plaintiff's Amazon storefront between February 1, 2023 and the end of August, 2023, that concern products supplied by vendors other than BH.

29. Before Plaintiff and BH began doing business, Plaintiff itself was a Defendant in two reported lawsuits in which trademark owners sued for infringement, that is, using their marks illegally on counterfeit products. In July, 2021, Plaintiff and another of its principals, Amaar Ashraf, were sued in federal District Court in Nebraska for injunctive relief and damages arising allegedly from "Defendants' misappropriation of FitLife's trademarks in conjunction with their unlawful and unauthorized sale of non-genuine, materially different products bearing FitLife's registered trademarks online." See Declaration of Richard A. Kaplan, Exh. B hereto ("Kaplan Decl."), attachment 1 (Complaint at 1). While a search service display of the case's

docket indicates that the case was dismissed without prejudice, *id*., docket, p. 3, the facts and circumstances of the resolution are not public.

30. In 2022, Plaintiff was sued together with other Amazon sellers in United States District Court for the Southern District of Florida for trademark infringement. *Id*., attachment 2.

31. Plaintiff filed its original Complaint in this matter on November 16, 2023.

32. Plaintiff asserts that on November 22, 2023, it served the Complaint against BH on "Joe Cohen" at 55 Talmadge Rd., Edison NJ.

33. Mr. Alhakim has stated previously that he never received the Complaint, does not know a Joe Cohen, and never authorized a Joe Cohen to accept service on behalf of BH. Alhakim Decl., Docket 60, ¶ 4. Mr. Alhakim has read the Declaration of Jennifer Apo and clarifies that no one in his family goes by or was born with the name "Joe Cohen" or "Joseph Cohen" to the best of his knowledge and belief. Alhakim Dismissal Decl., ¶¶ 21-22.

34. BH's registered agent at the time of the purported service was the Secretary of State of New York Id., Exh. 1.

35. Plaintiff has attempted through a Surresponse (couched as a Declaration) to show that a Joseph Cohen is a relative of Mr. Alhakim. Docket 66, filed in support of Docket 54.

36. Plaintiff, however, has offered nothing to show that this Mr. Cohen was an officer or director of BH or otherwise authorized in fact to receive service under the laws of New Jersey, the laws of Utah, or the Federal Rules of Civil Procedure.

37. Mr. Alhakim stands by his sworn Declaration that he does not know any of his relatives as Joe Cohen and that he never received a copy of the Summons and Complaint against BH until from his counsel after the garnishment. Alhakim Dec. Dismissal, ¶ 22.

38. It is undisputed that Plaintiff never served either the Complaint or either of its Amended Complaints on Swift Innovations, LLC or on Avi Alhakim.

39. It is undisputed that neither the Amended Complaint nor the Second Amended Complaint was served on BH directly or indirectly through a lawyer.

40. Plaintiff's original complaint and its two amended complaints both seek to hold BH 100% responsible for the collapse of Plaintiff's entire business and for all of Plaintiff's alleged lost profits beginning in August 2023 when Amazon suspended Plaintiff's store.

41. Plaintiff obtained a Certificate of Default (Docket 14) and later a Default Judgment against BH (Docket 23) and an Amended Default Judgment against BH (Docket 24) and, from what appears, "Swift Innovations."

42. Plaintiff's motions for both the Default Judgment and the Amended Default Judgment were predicated on the dubious assumption that Plaintiff alone is responsible for the collapse of Plaintiff's relationship with Amazon and on the false and misleading premise that Plaintiff's damages could be reduced to a "sum certain" even though the bulk of the claimed damages were plainly alleged "lost profits" for each month Plaintiff has been unable to operate.

43. Plaintiff applied for and obtained Writs of Garnishment from the Clerk of Court and served those Writs respectively on JP Morgan Chase in the case of BH and Bank of America in the case of Swift Innovations, LLC.

44. Bank of America garnished the Swift account and eventually wired the funds from that account to Plaintiff's Trust Account.

45. Plaintiff asserts that he mailed a check in the amount of the garnished funds to the Clerk of Court.

46. Whether the Court authorized the Clerk to retain the funds pursuant to a Motion by Plaintiff or directed the Clerk to refuse to accept the funds pursuant to a Motion by Swift is unclear. The cross motions are still pending.

47. Swift moved to set aside the Amended Default Judgment and to vacate the Writs, and Plaintiff filed an opposition.

48. The Court in Docket 50 granted Swift's motion and vacated the Amended Default Judgment as well as both of the Writs.

49. The parties disagree about the effect of Docket 50. Plaintiff maintains that the Order leaves the original Default Judgment in place. Defendant maintains that the Amended Default Judgment superseded the original Default Judgment and that as a result, in vacating the Amended Default Judgment, the Order vacated the only Default Judgment still in force and effect in the case.

50. The issue of the impact of Order 50 is a subject, among others, of BH's Amended Motion to Set Aside Default Judgment and Plaintiff's Opposition thereto; and of Plaintiff's Motion to Alter Judgment to Add Judgment Debtors and the Opposition thereto; as well as Plaintiff's Motion for Reconsideration.

51. In the meantime, the funds from Swift's bank account remain unavailable to Swift despite that the Amended Default Judgment and the Writs have been vacated and despite that serious questions obviously exist on this record with respect to the issues of both causation and damages and as to whether the original Default Judgment was properly issued without a hearing at which Plaintiff would have been required to establish the amount of his damages with "reasonable certainty."

## ARGUMENT

### A. BH was not properly served.

Plaintiff was required to serve its Summons and Complaint on BH within 90 days after filing the Complaint. Rule (4) (m), Fed. R. Civ. Pro. Plaintiff did not do so. Service on Joe Cohen was ineffective. That is so simply because the law governing service of process of corporations, partnerships and associations uniformly requires service on an officer, a director, a manager, a member in the case or LLC's, a general or managing agent or a person designated by law or in fact to receive service of process, and Mr. Cohen has none of those roles. There is no evidence that he was affiliated in any way with BH, and Alhakim never appointed a "Joe Cohen" or any other individual (other than the Secretary of State for New York) as BH's agent for purposes of accepting service of process. Service on Mr. Cohen was ineffective regardless whether he was a relative. Service on a family member who happens to be somewhere inside a warehouse where BH had an office and conducted business operations – we are not told where inside the building or even if the process server met Mr. Cohen outside the building -- does not satisfy the requirements of applicable law governing service on corporations, partnerships and associations, whether it be the Federal Rules, the law of Utah, or the law of New Jersey. Mr. Alhakim has sworn that he did not receive the summons and complaint from a "Joe Cohen" or anyone else, but even if he had received those documents the conclusion would be the same. As elaborated below, "notice" is no substitute for compliance with the rules for service.

According to the Proof of Service (Docket 8) Mr. Cohen communicated to the process server that he was "authorized" to accept service and the process server checked that box. The Proof of Service is silent as to whether Mr. Cohen asserted that he was affiliated with BH in

some way or was an "agent" of some kind or other or simply believed it was okay for him to take the summons and complaint. But even if we assume arguendo that Mr. Cohen claimed to be an "agent" of BH for purposes of accepting process, service on Mr. Cohen would nevertheless fail. "***Claims by an agent of having authority to receive process or the fact that an agent actually accepts process is not enough to bind the defendant to the court's jurisdiction; there must be evidence that the defendant intended to confer that authority upon the agent in order to satisfy the terms of Rule 4 (e) (2)***" *Jackson v. Western Architectural Services, LLC,* 2020 WL 2747856, * 3 (D. Utah 2020) (Waddups, J.) (unreported in Fed. Reg.) (emphasis supplied), quoting *Pollard v. Dist. of Columbia*, 125, 128 (D.D.C.2012). No such evidence exists here and Mr. Alhakim has denied knowing a "Joe Cohen", much less appointing a Joe Cohen BH's agent for accepting service of process. "To establish agency by appointment, an actual appointment for the specific purpose of receiving process is required." *Jackson, supra, quoting Pollard, supra*.

      Commonsense suggests that the reason why the rules governing service on businesses are as exacting as they are is that receipt of service is highly significant in a civil law suit; it has the effect of triggering obligations and deadlines for response. Service on any Tom, Dick, Harry or Susan or even on the mother or father of the managing member of a limited liability company who happens to be on or around the llc's business premises does not warrant such legal significance because unless any such person is in fact acting specifically upon the appointment of the defendant it is unfair to attribute their receipt of service to the defendant. A duly appointed agent for purposes of receiving service of process knows time is of the essence and can reasonably be expected to comport with his or her legal obligation to act promptly and with an appropriate sense of urgency for the benefit and protection of the principal. A random person,

even if that person were an employee of the company, or a family member, is not entrusted by the principal with such responsibility and cannot be counted on to exercise it promptly or at all.

Plaintiff has argued elsewhere that Mr. Shaikh's texts together with his counsel's letter gave BH, through Mr. Alhakim, "notice" of the lawsuit. But notice is not enough. The circuit courts that have addressed the issue have concluded "that actual, subjective awareness may be enough to satisfy constitutional due process but **formal compliance with Rule 4 is required as well**." Federal Civil Rules Handbook (2017) (emphasis supplied) (citations omitted). While there are cases in which courts have deemed certain flaws in a Proof of Service merely "technical," our research discloses no case in which the absence of actual authority has been deemed technical and to save service on that basis.

On the contrary, in *Sewell v. Xpress Lube*, 321 P.3d 1080, 1085-86 (UT 2013), the Utah Supreme Court soundly rejected the notion that "actual notice" substitutes for compliance with Rule 4 and thus confers jurisdiction. In that case, the person on whom service should have been made — the sole proprietor himself — actually found copies of the summons and complaint on his desk. "While we acknowledge that Anderson became aware of the lawsuit when he found copies of the summons and complaint on his desk, that knowledge does not substitute for proper service. . . " *Id*. at 1085. See also *Position Logic, LLC v. Patent Licensing Alliance, LLC*, 2017 WL 1136959 (D. Utah) (Stewart, J.).

Our research discloses no statute or caselaw in New Jersey that is any different. The Complaint and the two amended complaints against BH should be dismissed for insufficiency of service of process.

### B. BH is not subject to constitutional jurisdiction in Utah.

The Court should dismiss the claims against BH for the additional reason that even with all factual inferences from the Second Amended Complaint drawn in favor of Plaintiff, it does not state any facts sufficient to establish the required prima facie showing of personal jurisdiction over BH. See *Go Invest Wisely, LLC v. Barnes*, 382 P.3d 623, 627 (Utah App. 2016) (citing *Kamdar & Co. v. Laray Co.*, 815 P.2d 245, 247 (Utah App. 1991). Plaintiff's conclusory allegation that "This Court has personal jurisdiction over the Defendant because Defendant transacted business with Plaintiff, a Utah business, shipped items on Plaintiff's behalf pursuant to contract, directed its unlawful activities at Defendant, in Utah, and knowingly caused harm to Plaintiff which it knew would be felt in Utah" is legally insufficient to establish personal jurisdiction over BH. On this ground, too, the Complaint should be dismissed.

"The authority of the state to hale a nonresident into a state court hinges on the ability to establish personal jurisdiction." *Barnes, supra*, 382 P.3 623 at 628. There are two categories of personal jurisdiction, general and specific. While it is unclear whether Plaintiff is asserting general or specific jurisdiction or both, this Court has neither.

For general jurisdiction to exist over a nonresident, the defendant must engage in "continuous and systematic business contacts, *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416, 104 S.Ct.1868, 80 L.Ed.2d 404 (1984), that "approximate physical presence" in the forum state. *Bancroft & Master, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000). In *Daimler AG Bauman*, 564 U.S. 915 (2011), the Supreme Court used imagery to made these exacting requirements crystally clear. General personal jurisdiction exists only in a forum where the corporation is "at home." 571 U.S. at 137. It is inconceivable that Plaintiff

could present facts to support this standard, so the point need not be belabored further. There is no general personal jurisdiction in Utah.

As for specific jurisdiction, the gravamen of the standard is that the **defendant's** suit-related conduct must create a substantial connection with the forum state. Due process limits on the State's adjudicative authority exist to protect the liberty of the nonresident defendant — not the convenience of plaintiffs or third parties. *Walden v. Fiore*, 571 U.S. 277, 284 (2014) citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980).

In that same vein, courts consistently reject attempts to satisfy the defendant-focused "minimum contacts" inquiry by demonstrating contacts between the **plaintiff** (or third parties) and the forum state. *Helicopteros, supra*, 466 U.S. 408 at 417. "[The] unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction"). *Id*.

With these constitutional principles in mind, it is clear that the only connection the claims in this case have to the state of Utah is the fact that Plaintiff's business happens to be located in Utah. Plaintiff's claims purport to be based on the theory that BH's products were the cause of Amazon's decision to suspend Plaintiff's Amazon storefront. However, BH directed none of those products to Utah. Rather, the four products about which Plaintiff complains were all sent to States other than Utah. They were shipped instead to Amazon warehouses in New Jersey, Pennsylvania, and Arizona Alhakim Dismissal Decl., ¶ 19. The only connection this case has to Utah is thus that Plaintiff happens to have its place of business there and that happenstance alone is insufficient to establish jurisdiction over an out-of-state defendant.

### C. The Court does not have jurisdiction over Swift and Alhakim.

#### 1. Personal service of the Summons and Complaint was required.

Throughout these proceedings, both before and after the Amended Default Judgment was issued, Plaintiff has maintained that BH, Swift and Alhakim were essentially one and the same for legal purposes. Plaintiff described Swift as a d/b/a in both the Amended Complaint, (Docket 19, ¶ 2), and the Second Amended Complaint (Docket 21, ¶ 2). Plaintiff described both BH and Swift as the "alter ego" of Avi Alhakim. *Id*. In support of its collection efforts, Plaintiff described BH as a fraudulent transferor and Swift as a fraudulent transferee. There is no allegation in the First or Second Amended Complaint of a "transfer of interest" or ownership for purposes of Rule 25 (c) substitution or addition of parties.

In these circumstances, the law treats Swift and Alhakim for litigation purposes as a separate legal entity and person respectively and entitles them to receive not just personal service of a Rule 25 motion, but also to personal service of the summons and an amended complaint before they may be added as Judgment Debtors (assuming arguendo there is a judgment to add them to) or in any other capacity. See, e.g., *Jones v. Mackey Price Thompson & Ostler*, 469 P.3d 879, 899 (UT 2020) ("*Tremco* [156 P.3d 782] requires an entirely new proceeding where the plaintiff is asserting a new common-law or statutory claim – like alter ego or fraudulent transfer – that seeks to establish freestanding, independent liability for a new party") (citation omitted); see also, e.g., *Levin v. Garfinkle*, 514 F.Supp. 1160, 1163 (E.D. Pa, 1981), a fraudulent transfer case which dealt with a situation so identical to that presented here that the relevant passage warrants quotation in full: "Levin's theory throughout has been that the various corporate entities in question are the alter ego of Howard Garfinkle, and that this court should consider any

action by them to be an action by Howard Garfinkle. It is anomalous for Levin now to contend that these entities are anything other than a manifestation of Howard Garfinkle himself. Accordingly, Levin's motion for substitution under Rule 25 (c) will be denied."

Contrary to its position throughout this litigation, Plaintiff, like Levin, now characterizes Swift and Alhakim as "mere successors"[2] in an effort to circumvent service of a summons and complaint and the opportunity such service would present to Swift and Alhakim to defend themselves on the merits. Thus, Plaintiff pulls a sentence in the *Jones v. Mackey Price* case, supra, out of context: The sentence is: "Where mere substitution of a successor entity is sought, there is no requirement under Rule 25 (c) that the plaintiff initiate a new proceeding [against the non-parties sought to be joined] by service of a summons and complaint" *Id.*, ¶ 92.

What Plaintiff fails to cite, however, is the rest of the court's analysis, which dooms Plaintiff's position because it, like *Levin v. Garfinkle*, is squarely on point. The Court goes on to say that *Brigham Young University v. Tremco Consultants*, 156 P.3d 782 (UT 2017), from which the Court drew the above quote, is "distinguishable" from a case involving mere transfer of interest. *Tremco* stands for the proposition that: "*In light of the status conferred through the development of the common law and legislative action upon alter ego and fraudulent transfer, it is apparent that a claim founded on either theory is a civil action that must be ... commenced with the filing of a summons and complaint and not the abbreviated post-judgment collection procedures of rule 69 [of the Utah Rules of Civil Procedure.]*" Although neither was ever served, the Amended Complaint and Second Amended Complaint are the only complaints which mention Swift and Alhakim, and both of them allege that BH, Swift and Alhakim are essentially

---

[2]

all one and the same thing.  If Plaintiff wants to change its theory, the required way to do that is to file a new summons and a complaint comporting with its new theory.  From what appears, though, Plaintiff cannot do that because it has no evidence of a "transfer of interest" from BH to Swift or Alhakim as contemplated by Rule 25 (c).

### 2. Plaintiff cannot establish personal jurisdiction over Swift or Alhakim.

Personal service is a defect that Plaintiff could presumably cure by serving both Swift Innovations, LLC and Avi Alhakim with a new summons and complaint.  There is no point here, however, in waiting for Plaintiff to do that because the wait would be futile.  Plaintiff has no evidence that Swift or Alhakim personally has any business operations or other contacts and connections with the State of Utah that would justify the exercise of constitutional jurisdiction over them.  Apart from Alhakim's dealings with Plaintiff on behalf of BH, there is none. Alhakim Decl. Dismissal, ¶¶ 13 and 14.

## CONCLUSION

For these reasons, as well as those which counsel would make at oral argument if the request for argument is granted, this case should be dismissed in its entirety for lack of personal jurisdiction and the Court should declare that it lacks personal jurisdiction over nonparties Swift and Alhakim.  All other pending motions should be deemed moot.  The certificate of default should be vacated as should the original Default Judgment to the extent the Court determines it still have force and effect.  All proceedings in Utah should be deemed resolved and terminated.

Dated this 29th day of May, 2024.

Respectfully submitted,

 */s/ Richard A. Kaplan*
Richard A. Kaplan
YOUNG HOFFMAN, LLC
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I certify that on this 29th day of May, 2024, I caused a true copy of the foregoing **BH Elegant Linen, LLC's Motion to Dismiss and Request for Oral Argument** to be served via the court's electronic filing system upon the following:

>Jordan K. Cameron
>CAMERON RINGWOOD, LC
>6975 South Union Park Avenue, Suite 600
>Cottonwood Heights, UT 84047
>*Attorneys for Apothecary Movement, LLC*

                 */s/ Echo Peterson*
                 Echo Peterson