Richard A. Kaplan
YOUNG HOFFMAN, LLC
175 South Main Street, Suite 850
Salt Lake City, UT 84111
Telephone: 801-359-1900
Email: rkaplan@yahlaw.com
*Attorneys for Defendants*

---

### UNITED STATES DISTRICT COURT
### DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| APOTHECARY MOVEMENT, LLC, a Utah limited liability company, <br><br> Plaintiff, <br><br> vs. <br><br> BH ELEGANT LINENS, LLC dba AA WHOLESALE DEALS; a New York limited liability company, <br><br> Defendant. | **REPLY TO OPPOSITION TO MOTION TO DISMISS** <br><br> Civil No. 2:23-cv-00845-HCN-DAO <br><br> Judge Howard C. Nielson, Jr. |

In their Motion to Dismiss and supporting Memorandum, Defendant BH Elegant Linens, LLC, dba AA Wholesalers ("BH"), and Nonparties Swift Innovations, LLC ("Swift") and Avi Alhakim demonstrated, through Declarations and legal authorities, that any contacts they may have had with the State of Utah are limited to BH's dealings with Plaintiff and that such contacts were insufficient to establish personal jurisdiction over any of them as a matter of law. Plaintiff needs no discovery respecting its own dealings with BH, ie., communications, invoices and product shipments to Amazon warehouses outside of Utah. Plaintiff obviously concedes the insufficiency of those limited contacts to establish specific jurisdiction as it 1) admits it has no substantive response on the merits of jurisdiction and 2) asks for leave to conduct discovery on

the question whether BH has other, continuous and systematic contacts with Utah, so much and so many as to establish that BH, a New York LLC, is somehow "at home" in Utah such that it is subject to general jurisdiction.  As argued in the Opposition to Plaintiff's Motion for Leave [Doc. 78], the notion that general jurisdiction exists over BH or Swift or Alhakim) in Utah and might be uncovered through discovery is wholly unsupported.  Plaintiff's Opposition offers no evidence, or reason to find, that such an exercise – protracted document discovery and depositions -- might be productive rather than the waste of time and money it so obviously is. For these reasons, on the merits there can be no doubt Plaintiff cannot make even a prima facie case, much less establish jurisdiction, and thus that the Motion to Dismiss for lack of personal jurisdiction should be granted.

On the aspect of the Motion to Dismiss that concerns lack of service, the Motion to Dismiss and supporting Memorandum demonstrates that Plaintiff made no effort to serve Swift or Mr. Alhakim and that its attempted service on BH – through a "Joe Cohen" – failed because Mr. Alhakim has stated under oath that no Joe Cohen (or anyone using that name) had any affiliation whatsoever with BH and certainly no authority to accept service.  Plaintiff's Opposition on this point is predicated entirely on demonstrable falsehoods the most notable of which is that it had no option other than to serve someone in the building where BH conducts business because BH designated no registered agent in its corporate documents.  On the contrary, on the day service was attempted through Joe Cohen, BH's Certificate of Formation in the State of New York reflected that it had designated the Secretary of State of the State of New York as its registered agent.  See Motion to Dismiss at 2 and Exhibit 1 thereto.   [Docs 70  and 70-1 at p.7 of 44 ].  Accordingly, Plaintiff could have served the Secretary of State of New York and

thereby avoided any question about the sufficiency of service.  But Plaintiff chose not to take that simple step, instead choosing to attempt to serve a location that BH Elegant Linens uses as storage facility, without performing any due diligence to ensure that it was the primary place of business of the corporation, and/or whether or not the individual purportedly could validly accept service on behalf of the corporation under any corporate registration or valid state law regarding service of process on a New York corporation. [1] Furthermore, Plaintiff in a failed and procedurally impermissible attempt to correct its deficient attempts; submitted a naked declaration detailing a purported investigation prepared by Plaintiff's counsel's paralegal, as an impermissible sur-opposition to Defendant's reply, attempting to establish facts questioning whether service was reasonable.[2] Such filing was procedurally and improper and should not be considered by this Court, but even if it does, such document does not change the fact that service was not on an authorized agent of Defendant; at its primary place of business; or in compliance with the required statutory procedures for an entity incorporated under the laws of New York.[3]

---

[1] What is more, Plaintiff has simply made up (based upon a purported memory of a visit a year and a half ago) the idea that the warehouse at 55 Talmadge Rd., Edison, New Jersey had but a single door and a front desk staffed by a person with occupant information. [Doc. 54, ¶14-15, citing only to a Declaration of an individual without personal knowledge of the relevant facts (Doc. 45-1 at ¶21; and an unsworn document that is neither an affidavit from process server made more than 5 months after the date of purported service stating only, "The process server submitted the details for the service event on 11/22/2023 at 2:28 PM….These coordinates place the process server's device within 220 meters of the service address." And merely reaffirming the details contained in the original return of service, stating, "The process server states that he has served many documents since the time of this service, so he has to rely on his sworn affidavit. The process server believes the affidavit to be true as he has signed it." [Doc. 54-1 ].)

[2] *See* Declaration of Jessica Apo [Doc. 66], filed May 17, 2024 in support of Plaintiff's Opposition [Doc. 54, filed May 6, 2024]; and after Defendant's Reply [Doc. 64, filed 64] in contravention of the FRCP and without requesting any leave of the court or stipulation of counsel to do so.

[3] Sections 306, 306-A, New York Laws

BSC - Business Corporation Code, requiring completion of Service of Process/Notice of Claim Cover Sheet available from the New York Secretary of State and subsequent personal service on the New York Secretary of state, neither of which were ever completed. Furthermore   Mr. Alhakim has stated under oath that there are multiple doors, no front desk, and for the most part no building employees ever on site.  [Doc. 60, ¶4.]  Ultimately Plaintiff has the burden of establishing valid service, and it failed to establish facts or law sufficient to make its clearly deficient service valid.

Thus, on the merits of the question whether valid service was made on BH, BH should prevail and the Motion to Dismiss as it relates to that question, too, should be granted.

What is left of Plaintiff's Opposition to the Motion to Dismiss is its argument for finding waiver of the defense of lack of personal jurisdiction.  Plaintiff asserts two theories of waiver. The first of Plaintiff's theories is that the Motions by BH and Swift to Void the Default Judgment for lack of service were, "in substance", a Rule 12 (b) motion and that by making such a motion only for lack of service BH and Swift waived their right to assert lack of personal jurisdiction.[4]   Plaintiff's second theory of waiver is based on the nature and extent of participation by BH, Swift and Mr. Alhakim, purportedly constituting the request of "affirmative relief" from the court resulting in a consent to personal jurisdiction  Neither theory has any merit, neither legally nor on the facts of this case.

As to the first, the essence or substance of the several categories of Rule 12 (b) motions subject to waiver is that all of them involve challenges to the Complaint (that is, motions to dismiss the Complaint) based on deficiencies in the complaint or on the court's inability to preside over a particular lawsuit.  See generally Author's Commentary Federal Civil Rules Handbook (2024 ed.), p. 422.  The policy underlying waiver for failure to assert certain of these motions at the same time is that if there are valid challenges to the facial sufficiency of the complaint or to jurisdiction, those challenges should be presented together for resolution early in the case and before filing a responsive pleading such as an Answer. Id.  Nothing in the text of Rule 12 speaks to post-judgment proceedings, such as those Defendant BH and non-parties Swift

---

[4] Note that it is indisputable that this theory of waiver would not apply to Mr. Alhakim, as he is a non-party who has clearly not did not file any motions even related to improper service, whether as a Rule(12) motion, or one that would possibly constitute such a motion "in substance" as Plaintiff attempts to claim is legally relevant.

and Alhakim found themselves in here – ie., with Default Judgments in place, Writs of Garnishment having been served, and within only a few weeks a significant sum of money having been garnished. While the procedural posture of this case is somewhat unusual and therefore caselaw is limited, other federal courts have made clear that the post-judgment motions at issue in this matter are not the equivalent of Rule 12 motions, nor that Plaintiff's theory of "substantial similarity" bears any legal Merit. *See* Memorandum Opinion and Order from Case: 1:12-cv-08410 at Doc. 84 attached as an Exhibit to this motion, stating "But the general principle that personal jurisdiction is waived if not timely raised by motion or answer does not apply in cases of default, where there is no answer or motion. A defendant is always free to ignore the judicial proceedings, risk a default judgment, and then  challenge that judgment on jurisdictional grounds in a collateral proceeding." (*citing Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 706 (1982) and  *Davis v. Carter*, 61 Fed. App. 277 (7th Cir. 2003) (holding that Rule 12(h)(1)'s waiver principle is irrelevant as applied to parties who do not move to dismiss or answer the complaint, explaining that a party over whom the court lacks jurisdiction "retains the option of ignoring the proceedings and contesting jurisdiction later.")

At that time, the caption Plaintiff had constructed for the Amended Default Judgment and the Writs of Garnishment made it appear that not only BH but also Swift was a Judgment Debtor as argued in Swift's Motion to Set Aside Default Judgment as Void on the undisputed ground that Swift had never been served.  (Doc  30).  Neither that post-judgment motion, nor any of the other post-judgment motions filed by BH or non-parties Swift and Alhakim, sought dismissal of the Complaint under Rule 12 for lack of service or personal jurisdiction or for any other reason. Dismissal of the Complaint and Rule 12 or "Rule 12 like motion" was simply insufficient to

result in the return of inappropriately garnished funds, prevent future or additional garnishments and procedurally unavailable until dismissal of the Default judgment.  Instead, all of those motions sought only relief from the Default Judgment and the Writs of Garnishment, or to curtail discovery in support of wrongful writs, or to require Plaintiff to return monies wrongfully garnished.  Thus, to make the point even clearer, even assuming that all of these earlier motions were granted, the Amended Complaint would remain in place and in force.

After the Default Judgment and Writs of Garnishment were vacated pursuant to the Docket Text Order 50, the instant Motion to Dismiss for lack of personal jurisdiction and lack of service became timely and procedurally appropriate to dismiss the Amended Complaint and/or the Complaint if the Court somehow deems the latter to remain in force.  This Motion was the first motion filed that sought dismissal and it was filed within a reasonable period of time in the post-judgment context – that is, within three months after counsel made his initial appearances and less than a month after the Default Judgment and Writs of Garnishment were vacated by Docket Text Order 50.  Accordingly, contrary to Plaintiff's argument, the Court should find and hold that none of the earlier motions was "in substance" a motion to dismiss the Complaint or Amended Complaint under Rule 12 (b), and that the filing of those earlier motions did not constitute a waiver of the rights of Defendant BH or non-parties Swift and Alhakim to challenge personal jurisdiction through a Rule 12 (b) Motion to Dismiss the Complaint.

Plaintiff's second theory of waiver fares no better.  Plaintiff cites not a single case in which attempts by a Default Judgment Debtor to vacate the Default Judgment and collection efforts made pursuant to it to constitute participation in a litigation sufficient to constitute waiver of a defense of lack of personal jurisdiction.  Yet that is all that has transpired here. Counsel has

entered limited appearances solely for the purpose of contesting jurisdiction, ie., the authority and power of the Court over defendant BH and non-parties Swift and Alhakim.  If by challenging a default judgment and writs of garnishment issued pursuant to it a defendant waived the defense of personal jurisdiction, that would put a default judgment debtor to a Hobson's choice:  Leave the judgment and writ in place, forfeit monies garnished, as well as the defense of personal jurisdiction, or, as the price of moving to vacate the default judgment and writs, litigate the entire case in a jurisdiction that, simply put, you are not "at home" in and that legally is not authorized to exercise power over you.  By the same token, such a rule would not merely encourage but enable a plaintiff to choose a forum as inconvenient and disadvantageous to the defendant as possible, without having to concern itself whether there is personal jurisdiction in that forum, or whether service or venue was proper, and so on. In short, deeming the efforts of BH, Swift and Alhakim to undo harm wrongfully done to them to constitute a waiver of the defense of personal jurisdiction is unfair and unsupportable and not the law insofar as we can discern.

By contrast, the rare cases in which courts have found such a waiver all appear to require the defendant to engage the power of the court to grant affirmative relief, such as through a counterclaim or crossclaim for damages.  See, e.g., *Edwards v. Fernandez & Saunders,* 2006 WK 3544604 (D. Utah Dec. 8, 2006), finding that the filing of a motion to dismiss or a motion to transfer does not constitute "affirmative relief", based upon the definition of "affirmative relief" in Black's Law Dictionary *8th ed. 2004) (defining "'affirmative relief' in this context as "[t]he relief sought by a defendant by *raising a counterclaim or crossclaim* that could have been maintained independently of the plaintiff's action." (*emphasis added*)

Clearly, Plaintiff has done nothing more make conclusory assertions that Defendant and the non-parties have "affirmative relief" which waives personal jurisdiction, without any legal support whatsoever for the basis that such actions were not required prior to filing a motion to dismiss, or that they constitute the required request of "affirmative relief" such that waiver of arguments for dismissal related to insufficient service and/or personal jurisdiction are legally appropriate, nor even attempted to provide any definition of the term "affirmative relief" or why this definition would apply. As described in the paragraph above, at least one federal court in Utah has defined conduct sufficient to result in waiver of personal jurisdiction as "affirmiate relief, " ie-"relief sought by a defendant by raising a counterclaim or crossclaim that could have been maintained independently of the plaintiff's action," which clearly does not apply to any of Defendant's or non-parties' conduct in this case. Our research has not revealed any relevant caselaw providing any contrary position, as dicta or otherwise.

Furthermore, commonsense suggests that as it relates to the facts and circumstances presented here, Defendant's/non-parties, in seeking relief from this court, have neither sought anything *affirmative*, only seeking to correct the inappropriate affirmative relief requested by and granted to Plaintiff. While seeking a default judgment is affirmative; seeking to vacate one is not. Seeking a writ of garnishment is affirmative; seeking to vacate one is not. Obtaining property under the power of such a writ is affirmative; seeking a return of property on grounds that the writ was issued pursuant to a judgment entered by a court without power over the defendant is not. In sum, a party seeking *to obtain* money or property from another party through a claim seeks affirmative relief. By contrast, a party seeking *relief from* something, ie., from a default judgment or writ of garnishment as BH, Swift and Alhakim have done here, does not.

The only case that Plaintiff has provided the Court in support of this participation theory is *Hunger U.S. Special Hydraulics Cylinders Corp. v. Hardie-Tynes Mfg. Co.*, No 99-4042, 2000 WL `47392 (10th Cir. Feb. 4, 2000), which finds waiver because defendant "actively participated in the litigation and sought affirmative relief from the court".  The court's holding was completely consistent with the Utah court's analysis in the *Edwards* case, and is neither legally or factually applicable to establish that Defendant/non-parties have "actively participated in the case *and* sought *affirmative relief* from the court." *Id.* (*emphasis added.*)  In *Hardie-Tynes,* defendant's conduct involved both active participation in the proceeding and sought affirmative relief from that court, both of which were required to constitute waiver. *Id.* Specifically, the *Hardie-Tynes* defendant filed a cross claim, sought to obtain a prejudgment writ of attachment, failed to raise personal jurisdiction as a defense until after three years of active participation in the litigation. *Id.*  Those circumstances bear no resemblance to the facts and circumstances presented here. *Hunger* is not helpful to Plaintiff.


Dated this 19th day of July, 2024.


Respectfully submitted,

*/s/ Richard A. Kaplan*
Richard A. Kaplan
YOUNG HOFFMAN, LLC
*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 8th day of July, 2024, I caused a true copy of the foregoing **Reply to**

**Opposition to Motion to Dismiss** to be served via the court's electronic filing system the

following:

Jordan K. Cameron
jordan@cameronringwood.com
CAMERON RINGWOOD, LC
6975 South Union Park Avenue, Suite 600
Cottonwood Heights, UT 84047
*Attorneys for Apothecary Movement, LLC*

/s/ Echo Peterson
Echo Peterson

# EXHIBIT 1

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

ISAAC PARDO,                    )
                               )
    Plaintiff,              )
                               )
            v.          )    No. 12 C 08410
                               )
                               )    Judge John J. Tharp, Jr.
MECUM AUCTION, INC., WILLIAM    )
MULLIS, and JAN MULLIS,         )
                               )
    Defendants.             )

## MEMORANDUM OPINION AND ORDER

Plaintiff Isaac Pardo, a New York resident and Corvette enthusiast, purchased a "highly prized, rare classic Corvette"—a 1967 black coupe—at the Bloomington Gold Auction in St. Charles, Illinois. The vehicle was part of a collection of Corvettes formerly owned by William and Jan Mullis before they sold the cars to Mecum Auction, the operator of the Bloomington Gold Auction. Pardo discovered within minutes of his winning bid that the car was a fake; he learned later that it was in fact "an inferior red 1964 Corvette made out to be a 1967 black Corvette."

On September 6, 2011, Pardo sued the Mullises, among other defendants, in the U.S. District Court for the Eastern District of Pennsylvania, claiming that they violated the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA") and various common-law fraud doctrines. The Mullises never answered or appeared, and on May 7, 2012, the clerk's office entered a default as to the Mullises under Federal Rule of Civil Procedure 55(a). Subsequently, the district court concluded that it lacked personal jurisdiction over defendant Mecum Auction and that venue was improper in the Eastern District of Pennsylvania, and on September 18, 2012, it transferred the case to this Court. However, in its opinion transferring the case, the district

1


AUTHENTICATED
U.S. GOVERNMENT
INFORMATION
GPO

court noted that it had not, and had not been asked to, enter a default judgment against the Mullises, which would require a motion and a prove-up of damages. *See* Mem. Op., Dkt. #16, at 6 n.3.

Upon the transfer to this Court, Pardo amended his complaint, bringing Mecum Auction back into the case. The amended complaint omitted all of Pardo's common-law fraud and promissory estoppel claims against the Mullises but reasserted the ICFA claim. Although summonses were issued as to the Mullises, they were never served with the amended complaint. Instead, on June 19, 2013, Pardo moved this Court to enter default judgment against the Mullises on the original complaint; he sought $60,589.38 in compensatory damages, another $60,589.38 in punitive damages (in effect, double damages), and $24,532.30 in attorney's fees and costs. Motion, Dkt. # 42.

Before the Court could rule, however, the Mullises appeared and moved to vacate the default. *See* Appearance & Motion, Dkt. ## 45-46 (July 11, 2013). Shortly thereafter they also moved to dismiss the amended complaint for lack of personal jurisdiction and failure to allege a fraud claim with particularity. *See* Motion, Dkt. ## 52-53. After all the parties detoured to unsuccessful settlement proceedings, they fully briefed the Mullises' twin motions; the default judgment motion remains pending as well. The Court now concludes, for the reasons explained below, that Pardo is not entitled to a default judgment against the Mullises and, further, that the complaint must be dismissed as to the Mullises for lack of personal jurisdiction and failure to state a claim.

## DISCUSSION

### A.    Motion for Default Judgment and Motion to Vacate Clerk's Entry of Default

Pardo contends that he is entitled to default judgment against the Mullises for their failure to respond to the original complaint (filed in the Eastern District of Pennsylvania), which they deliberately chose to ignore despite having been served. The Mullises argue that default judgment is inappropriate because the underlying default order cannot stand; their motion to dismiss further argues that this Court lacks personal jurisdiction over them. If that is so, the question of vacating the technical default becomes academic, because this Court is not empowered to enter a default judgment against a party over whom it lacks personal jurisdiction.

The Mullises raise three arguments in favor of vacating the clerk's entry default: (1) the default order was voided by the subsequent amendment of the complaint; (2) the default order was void *ab initio* because the court lacked personal jurisdiction over the Mullises; and (3) there was good cause for the default as required by Federal Rule of Civil Procedure 55(c).

As a threshold issue, *see In re LimitNone, LLC*, 551 F.3d 572, 577 (7th Cir. 2008), the Court first addresses the personal jurisdiction question. And in the context of the motion to vacate the default order, the specific question is whether the District Court for the Eastern District of Pennsylvania—not this Court—had personal jurisdiction over the Mullises to enter the default order. Pardo concedes, as he should, that "personal jurisdiction is necessary for the entry of the default." Mem., Dkt. # 77 at 5. But he argues that the Pennsylvania court did have jurisdiction and, as support, submits his own affidavit attesting that the Corvette auction was advertised on the Internet, and therefore within Pennsylvania.

The Mullises have the better of the jurisdictional argument. Indeed, although Pardo fails to reckon with it in any way, his argument already was rejected in this case, when he opposed

3

Mecum's motion to dismiss for lack of personal jurisdiction in Pennsylvania. Pardo had more arguments supporting personal jurisdiction over Mecum than he can muster as to the Mullises,[1] and still he failed to meet his burden because the ties to Pennsylvania were so slight. In granting Mecum's motion, Judge Pratter specifically rejected a national marketing campaign as a hook for personal jurisdiction. Mem. Op., Dkt. # 17 at 4. Pardo is effectively asking this Court to overrule Judge Pratter on the issue of personal jurisdiction; although Judge Pratter was assessing a different defendant, her reasoning applies with even greater force to the Mullises, who have an even slighter connection to Pennsylvania.

Judge Pratter had it just right. This case has nothing to with Pennsylvania. The original complaint, upon which the Rule 55(a) order of default was entered, alleges absolutely no connection to Pennsylvania. No party resides there, and no part of the sale of the car took place there. Mecum's auction occurred in Illinois. The Mullises live in Florida; according to the pleadings, they also have ties to North Carolina, but none whatsoever to Pennsylvania. Pardo's affidavit, which he argues creates an issue of fact as to the existence of personal jurisdiction, does not help him. All it does is describe his own web browsing activities (which did not occur in Pennsylvania); Mr. Pardo does not claim to possess any personal knowledge about who is responsible for the advertising he viewed, and he does not claim to have been lured either to or from Pennsylvania by that advertising. There is no basis in the complaint or the affidavit on which to infer that the Mullises—as distinct from other defendants—deliberately targeted or exploited the Pennsylvania market (even assuming they were the sellers, as alleged). *See be2LLC v. Ivanov*, 642 F.3d 555, 559 (7th Cir. 2011). There is the possibility that someone in

---

[1] For example, Pardo had relied on Mecum auctions that had been held in Pennsylvania from 2004 to 2006, at which he claimed to have formed a relationship of trust with Mecum. By contrast, Pardo does not allege that Mullises have ever set foot in Pennsylvania.

Pennsylvania might have viewed information about William Mullis's Corvette collection or the Mecum auction of Corvettes on the Internet, but there is no suggestion that any of the allegedly fraudulent acts such as tampering with the Corvette's appearance occurred in Pennsylvania or that Pennsylvania consumers were targeted with advertising of the auction.

Pennsylvania's long-arm statute, like most, allows the exercise of personal jurisdiction over defendants in cases arising from the certain enumerated acts and to the full extent permitted by the Constitution—which is to say, when the requisite "minimum contacts" are present. 42 Pa.C.S.A. § 5322(a)-(b); *see Kehm Oil Co. v. Texaco, Inc.*, 537 F.3d 290, 299-300(3d. Cir. 2008). Given the lack of ties between the facts of this case and Pennsylvania, Pennsylvania's long-arm statute does not vest that state's courts with personal jurisdiction over the Mullises. Accordingly, service of process on the Mullises did not establish personal jurisdiction; under Federal Rule of Civil Procedure 4(k)(1), personal jurisdiction is established by service of process only where, as relevant here, the defendant is "subject to the jurisdiction in the state where the district court is located." The Mullises were not subject to personal jurisdiction in Pennsylvania, so Rule 4(k)(1) does not apply.

It is clear enough that a default judgment entered against a party over whom the court lacks personal jurisdiction is void, and entering judgment under those circumstances—or failing to vacate it once the problem is raised—is a *per se* abuse of the court's discretion. *be2 LLC,* 642 F.3d at 557; *Relational, LLC v. Hodges*, 627 F.3d 668, 671 (7th Cir. 2010). Less clear is whether the Mullises preserved their right to rely on this defense. After all, the lack of personal jurisdiction is an affirmative defense, which, unlike subject matter jurisdiction, can be waived if not asserted. *See* Fed. R. Civ. P. 12(h) (the defense of lack of personal jurisdiction is waived if not timely raised in a Rule 12(b)(2) motion or in the first responsive pleading); *Ins. Corp. of*

5

*Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 704 (1982). And here, the Mullises, unlike Mecum, did not show up in court to raise the defense before the order of default was entered, leading the Court to question whether they forfeited their right to use it now as a basis for vacating the default order.

But the general principle that personal jurisdiction is waived if not timely raised by motion or answer does not apply in cases of default, where there *is* no answer or motion. "A defendant is always free to ignore the judicial proceedings, risk a default judgment, and then challenge that judgment on jurisdictional grounds in a collateral proceeding." *Compagnie des Bauxites de Guinee*, 456 U.S. at 706. Accordingly, in *Swaim v. Moltan Co.*, 73 F.3d 711 (7th Cir. 1996), the Seventh Circuit held that a defaulted party does not forfeit a challenge to personal jurisdiction. *See id.* at 717*; see also Philos Technologies, Inc. v. Philos & D, Inc.,* 645 F.3d 851, 856-57 (7th Cir. 2011) (discussing the "risks and benefits" of the options of responding to a lawsuit with a challenge to personal jurisdiction versus ignoring the suit and relying on the right to collaterally attack any resultant default judgment); *Davis v. Carter*, 61 Fed. App. 277 (7th Cir. 2003) (holding that Rule 12(h)(1)'s waiver principle is irrelevant as applied to parties who do not move to dismiss or answer the complaint, explaining that a party over whom the court lack jurisdiction "retains the option of ignoring the proceedings and contesting jurisdiction later").[2] Therefore, the Mullises did not waive the right to assert their personal jurisdiction defense by

---

[2] In *WMS Gaming Inc. v. WPC Prods.*, 542 F.3d 601, 605 (7th Cir. 2008), the Seventh Circuit held, on an appeal from the entry of default judgment, that by operation of Rule 12(h)(1), a defendant had waived its right to contest personal jurisdiction. But the appeal in that case was not filed by the defaulted defendants; rather, the plaintiff appealed, seeking a larger damages award. Therefore the Court's reference to the defendants' waiver of their personal jurisdiction defense was *dicta*, and while difficult to square with *Compagnie des Bauxites de Guinee* and *Swaim* does not create an actual conflict with the view that the forfeiture of the personal jurisdiction defense occurs only when a party files a responsive pleading that fails to assert the defense, not when the party does not appear at all.

defaulting; they asserted it in their first response when they ultimately came into the case. And because the defense is meritorious, the default entered in the Eastern District of Pennsylvania must be vacated; the Mullises' motion is granted.[3]

It follows that the Court must also deny Pardo's motion for a default judgment; there is not a valid event of default upon which the Court may enter final judgment under Rule 55(b)(2).[4]

### B.    Motion to Dismiss

So the Mullises are in this case. And although they were not served with the amended complaint, they moved to dismiss it when they appeared to defend against the entry of default judgment. In seeking to dismiss the amended complaint, they argue that this Court, like the

---

[3] Because they were within their rights to defer their challenge to personal jurisdiction, the Court is also constrained to conclude that the Mullises can also establish "good cause" for their default. Under Rule 55(c) a party seeking to vacate default before entry of final judgment must show, among other things, good cause for the default. *Cracco v. Vitran Exp., Inc*., 559 F.3d 625, 630-31 (7th Cir. 2009); *Sun v. Bd. of Trs. of the Univ. of Ill*., 473 F.3d 799, 810 (7th Cir. 2007); *Pretzel & Stouffer v. Imperial Adjusters, Inc*., 28 F.3d 42, 45 (7th Cir. 1994). The Court notes, however, that the other factors the Mullises cite in their motion—their factual defense (they claim that they did not own the car at the time of the challenged sale) and their unreasonable reliance on Mecum (a co-defendant with conflicting interests) to "take care" of the litigation for them—do not satisfy the "good cause" standard.

The Mullises' argument that the May 7, 2012, order of default against the Mullises, entered pursuant to plaintiff's request (*see* Dkt. # 15), is "a nullity" because the complaint was later amended is not persuasive. The amendment of the complaint had no real effect on the Mullises; no new claims against them were asserted—in fact, claims were subtracted. For that reason, as defaulted parties they were not entitled to service of the amended complaint. *See* Fed. R. Civ. P. 5(a)(2) ("No service is required on a party who is in default for failing to appear. But a pleading that asserts a new claim for relief against such a party must be served on that party under Rule 4."). Thus, although the Mullises correctly state that an amended complaint typically supersedes prior pleadings, they are not beneficiaries of that rule here because they were not served, and were not required to be served, with the amended pleading. Pardo is within his rights to stand on the original complaint as to the Mullises. *See, e.g., Western Sur. Co. v. Leo Const., LLC*, No. 3:12-CV-1190, 2013 WL 144097, at *9-10 (D. Conn. 2013). As will be seen, though, that is not of much help to him.

[4] Furthermore, to the extent that this Court also lacks personal jurisdiction, as argued in the motion to dismiss, it cannot enter default judgment.

Eastern District of Pennsylvania, lacks personal jurisdiction over them, and that, in any event, the complaint does not state a valid claim against them.

### 1. Personal Jurisdiction

As already noted, Rule 4(k)(1) provides that personal jurisdiction is established through service of process when the defendant is subject to the jurisdiction of the courts in the state where the district is located. Here, there has been no service on the Mullises of the amended complaint or the process issued by the Court; summonses were issued, but not served upon, the Mullises. So personal jurisdiction is not established by operation of Rule 4(k)(1).[5]

The failure to serve is curable—assuming the Court were inclined to grant an extension of time, see Fed. R. Civ. P. 4(m)—but it is not the only impediment to personal jurisdiction. As the Mullises argue in their motion to dismiss, the complaint does not allege any facts that suggest that they would be subject to the jurisdiction in the courts of Illinois.

Absent any contention that the Mullises have continuous and systematic contact with Illinois, Pardo must establish specific personal jurisdiction by showing that they purposefully directed their activities at the forum state or purposefully availed themselves of the privilege of conducting business there, and further that the alleged injury arises out of the defendants' forum-

---

[5] The Mullises have forfeited any argument about sufficiency of process by appearing in this Court and responding to the amended complaint by motion without asserting a defense relating to the sufficiency of process. *See generally* Fed. R. Civ. P. 12(h)(1); *O'Brien v. R. J. O'Brien & Assocs., Inc.*, 998 F.2d 1394, 1399 (7th Cir. 1993) ("a party must include a defense of insufficiency of process in its first Rule 12 motion or the defense is waived"). That forfeiture does not, however, mean that they have waived their personal jurisdiction defense; notwithstanding the overlap between service of process and personal jurisdiction under Rule 4(k)(1)(A), Rule 12(b) (and therefore, Rule 12(h)(1)) distinguish a defense based on lack of personal jurisdiction from one of insufficiency of process. In other words, the Court does not construe Rule 4(k)(1)(A) to require the Mullises to cast their challenge to personal jurisdiction in the guise of an argument concerning the propriety of service under the Illinois long-arm statute (particularly when no attempt at service was made at all); it is sufficient that they have argued the merits of the jurisdictional issue.

related activities. *Tamburo v. Dworkin,* 601 F.3d 693, 702 (7th Cir. 2010) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 472 (1985).

The Illinois long-arm statute provides that a person submits himself to the specific personal jurisdiction of the Illinois courts in matters arising from various acts;[6] the only ones Pardo deems relevant are "the transaction of any business within this State," 735 ILCS 5/2-209(a)(1), or "the making or performance of any contract or promise substantially connected with this State," *id.* § 2-209(a)(7). The long-arm statute also permits the exercise of personal jurisdiction to the full extent allowed by the federal Due Process Clause, so in practical effect the inquiry collapses into the familiar "minimum contacts" test. *See Tamburo* 601 F.3d at 700–701 (7th Cir. 2010). At this stage, Pardo need make only a *prima facie* showing of jurisdictional facts, and he gets the benefit of any disputed facts. *See id.* at 700.

Here, Pardo does not allege any *facts*—as opposed to conclusory statements, supported with an affidavit that provides no basis for personal knowledge of the Mullises' activities—that

---

[6] Specifically: "(1) The transaction of any business within this State; (2) The commission of a tortious act within this State; (3) The ownership, use, or possession of any real estate situated in this State; (4) Contracting to insure any person, property or risk located within this State at the time of contracting; (5) With respect to actions of dissolution of marriage, declaration of invalidity of marriage and legal separation, the maintenance in this State of a matrimonial domicile at the time this cause of action arose or the commission in this State of any act giving rise to the cause of action; (6) With respect to actions brought under the Illinois Parentage Act of 1984, as now or hereafter amended, the performance of an act of sexual intercourse within this State during the possible period of conception; (7) The making or performance of any contract or promise substantially connected with this State; (8) The performance of sexual intercourse within this State which is claimed to have resulted in the conception of a child who resides in this State; (9) The failure to support a child, spouse or former spouse who has continued to reside in this State since the person either formerly resided with them in this State or directed them to reside in this State; (10) The acquisition of ownership, possession or control of any asset or thing of value present within this State when ownership, possession or control was acquired; (11) The breach of any fiduciary duty within this State; (12) The performance of duties as a director or officer of a corporation organized under the laws of this State or having its principal place of business within this State; (13) The ownership of an interest in any trust administered within this State; or (14) The exercise of powers granted under the authority of this State as a fiduciary."

plausibly suggest that the Mullises transacted any business in the State of Illinois, contracted for business here, or otherwise had minimum contacts with the State.[7] The sale of the Corvette occurred at Mecum's auction in Illinois, but the complaint (which includes its exhibits) shows that "the Mecum Collection," not the Mullises, sold the car to Pardo. The Mullises' former ownership of a car that was ultimately sold in Illinois does not permit a reasonable inference that they ever purposefully established contacts with Illinois.

In response to the motion to dismiss, Pardo suggests that the Mullises are hiding facts that would establish personal jurisdiction over them; he states: "Mr. Mullis fails to inform this Court that he promoted his Black Corvette Collection in the internet on multiple websites for months before the sale of the Black collection and the subject Corvette to Plaintiff" and "Mr. Mullis also fails to make this Court aware that he owned a nationally recognized Corvette repair facility that advertised in the internet." Mem., Dkt. # 78 at 2. But Pardo does not explain the relevance of these supposed facts to the minimum-contacts inquiry; he seems to equate the World Wide Web with worldwide jurisdiction, but the law is considerably more nuanced.

Pardo also contends that there are five specific allegations from the complaint that sufficiently allege that the Mullises transacted business in Illinois.[8] However, almost none of the listed allegations show any contacts with Illinois, and the one that does—that "the

---

[7] The Court has not concluded that the Mullises lack minimum contacts. Pardo is free to muster whatever jurisdictional facts he can, but the general allegations in the amended complaint and the facts in his affidavit do not make a prima facie case at this point.

[8] Specifically: (1) "The Corvettes being sold . . . were owned by Defendant Mullis before being transferred to Mecum"; (2) "The subject corvette contained fraudulent vehicle identification number . . . which was placed by one or more of the defendants underneath the glove compartment, and res-stamped on the engine (requiring one or more defendants to grin down the old VIN)"; (3) Defendants falsely represented the vehicle to be an original 1967 black Corvette"; (4) "Defendants illegally procured a fake fraudulent 'trim tag' denoting the characteristics of the vehicle"; and (5) "the misrepresentations occurred in the State of Illinois and transpired during the course of the auction."

misrepresentations occurred in the State of Illinois and transpired during the course of the auction"—does not help. First of all, there is no such allegation in ¶ 22 of the amended complaint, which is what Pardo cites as support for the statement. Second, because the complaint fails to link the Mullises to the auction, the fact that the fraud occurred during the auction (even taking the allegation as true)) does not constitute contact between the Mullises and the forum state.

As the change of venue in this case underscores, Illinois is an appropriate forum for this lawsuit because some of the events took place here. What Pardo has not yet done, however, is credibly allege a connection between the Mullises and the events that occurred in the State of Illinois. Such a connection might exist, sufficient to confer specific personal jurisdiction. Maybe the Mullises deliberately availed themselves of the Bloomington Gold Auction to fence their allegedly phony wares; maybe they sold their cars to Mecum in Illinois with the expectation of them being auctioned here; maybe they were involved in promoting the auction or participated in it in some manner. As yet, however, Plaintiff has not alleged plausibly any conduct by the Mullises—as opposed to "the defendants" as a collective—that is indicative of them having minimum contacts in the State of Illinois.

This same reliance on undifferentiated general allegations about the conduct of the "defendants" collectively, and the dearth of specific allegations about the actions of the Mullises, plagues the complaint as a whole, and, as discussed below, it would require dismissal even if Pardo had met his burden of making out a prima facie case for personal jurisdiction.

### 2.    Failure to State a Claim

The Mullises contend that even if there is personal jurisdiction over them, this Court should dismiss the complaint for failure to state a valid claim of fraud. When considering a

motion to dismiss under Rule 12(b)(6), the Court accepts as true all well-pleaded facts and draws all reasonable inferences in favor of the plaintiff. *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013) (further noting, however, that statements of law or unsupported conclusory allegations are not accepted as true). Exhibits attached to a complaint become part of the pleadings, *see* Fed. R. Civ. P. 10(c), and can be considered on a motion to dismiss. *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013). To survive a motion to dismiss under Rule 12(b)(6), the complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Yeftich*, 722 F.3d at 915. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Moreover, when a plaintiff in federal court alleges fraud under the ICFA, the heightened pleading standard of Federal Rule of Civil Procedure 9(b) applies. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011); *Davis*, 396 F.3d at 883.[9] "Rule 9(b) requires that facts such as 'the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff' be alleged in detail." *Hefferman v. Bass*, 467 F.3d 596 (7th Cir. 2006) (quoting *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir. 1992)).

With respect to the Mullises (Mecum has not challenged the adequacy of the pleadings), Pardo's complaint lacks the specific factual assertions that could plausibly show entitlement to

---

[9] When the plaintiff alleges "unfair conduct" under the ICFA rather than "fraud," the particularity requirement of Rule 9(b) does not apply. *Windy City Metal Fabricators & Supply, Inc. v. CIT Technology Financing Services, Inc.*, 36 F.3d 663, 669-70 (7th Cir. 2008). Here, however, the complaint plainly alleges intentional fraud.

relief. Every factual allegation that could support an inference of fraud refers to "the defendants," which includes not only the Mullises—who are never distinguished from each other as to the fraud at issue—but also Mecum (and, formerly, the National Corvette Restorers Society). The only specific conduct by the Mullises—Bill Mullis only, to be precise—that Pardo ever alludes to is the promotion of his black Corvette collection and his Corvette repair shop on the Internet. But if these allegations have anything to do with the fraud at issue, Pardo has not connected the dots. Pardo does not say that Bill Mullis (as opposed to an undifferentiated group of "defendants") fraudulently advertised a black Corvette collection that Mullis knew to be phony; if he has a good-faith basis for that allegation, he should make it in his amended complaint. Similarly, the alleged fact that Bill Mullis owns a Corvette repair business does not suffice as an allegation that he used that business to create the ersatz black 1967 Corvette that Pardo bought at the auction, nor is it enough to support a reasonable inference of that conduct.

Pardo might not know who defaced the red Corvette and made it look like a black one, but he is not entitled to sue a group of defendants and conduct discovery to sort it out. "Each defendant is entitled to know what he or she did that is asserted to be wrongful." *Bank of America, N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013) (explaining that even in a conspiracy case, a complaint cannot be based on "a theory of collective responsibility."). Pardo has sued Mecum for selling him a car that it knew or should have known was not authentic. It is not clear what he is suing the Mullises for; if he has reason to believe that they are the ones who altered the car, he should say so. If they sold the car to Mecum for the specific purpose of having Mecum perpetrate a phony sale, he should say so. Under Rule 9, he must provide them with proper notice of what misrepresentation they made to him, as well as the details of when, where,

and how they communicated that misrepresentation to him.[10] Even under normal pleading standards, he must allege facts supporting personal liability for each individual defendant. *See Knight*, 725 F.3d at 818. Because the amended complaint fails to do so, the motion to dismiss must be granted, even apart from the issue of personal jurisdiction.

* * *

To summarize the Court's rulings, first, the Mullises' motion to vacate the entry of default is granted because it was entered by a court without personal jurisdiction over them. Second, Pardo's motion for default judgment is denied, both because the underlying clerical default is voided and because this Court cannot enter a default judgment against a party over whom it lacks personal jurisdiction. Third, the Mullises' motion to dismiss the amended complaint (as to which they are deemed to have waived formal service) is granted because personal jurisdiction over them is lacking and because, in any event, the complaint fails to allege fraud by the Mullises, as individuals, with sufficient particularity. The complaint is dismissed without prejudice and the plaintiff is granted leave to re-plead within 30 days.

Date: February 18, 2014

John J. Tharp, Jr.
United States District Judge

___

[10] The "where" will be important for purposes of personal jurisdiction.

14