IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| APOTHECARY MOVEMENT, LLC, a Utah limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>BH ELEGANT LINENS, LLC, dba AA WHOLESALE DEALS, a New York limited liability company; and SWIFT INNOVATIONS, a New York limited liability company,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:23-cv-845-HCN-DAO<br><br>Howard C. Nielson, Jr.<br>United States District Judge |

Plaintiff Apothecary Movement, LLC, sued Defendant BH Elegant Linens, LLC, asserting various state-law claims. When BH failed to appear, Apothecary requested and received a default judgment. BH now moves to set aside the judgment for lack of personal jurisdiction. The court grants BH's motion.

I.

Apothecary is a Utah limited liability company that sells products on Amazon.com. *See* Dkt. No. 21 (Second Amended Complaint) ¶¶ 1, 7. BH, doing business as AA Wholesale Deals, is a New York limited liability company that contracted with Apothecary to fulfill Apothecary's Amazon purchase orders. *See id.* ¶¶ 2, 8–10. Under the parties' agreement, Apothecary would place orders with BH for specific quantities of various items that Apothecary advertised on Amazon. *See id.* ¶¶ 10–11. When a customer purchased one of those items, BH would fulfill the order by delivering the purchased item to an Amazon warehouse. *See id.* ¶¶ 11–12. Crucially, the

items were advertised to customers as "new," and the parties' agreement specified that BH was to deliver unused goods. *See id.* ¶¶ 10–13.

Apothecary alleges that some of the items BH delivered were not new and that some of the items were not available from BH in the quantities it promised to provide and represented it had. *See id.* ¶¶ 14–19. When customers complained, Amazon suspended Apothecary as a seller and canceled its pending sales. *See id.* ¶ 14. Apothecary alleges that, as a result, it lost approximately $2 million per year in sales on Amazon and incurred other losses as well. *See id.* ¶¶ 22–24.

Apothecary brought this suit against BH in November 2023. *See* Dkt. No. 1 (Complaint). To effect service, Apothecary hired ABC Legal, whose process server drove to the address listed for BH on the New York Secretary of State's website. *See* Dkt. No. 8 at 2; Dkt. No. 54-1 at 2; Dkt. No. 45-1 at 17. After entering the building he found at that address, the process server "delivered the documents to Joe Cohen who identified [himself] as the person authorized to accept with identity confirmed by subject stating [his] name." Dkt. No. 54-1 at 2. "The individual appeared to be a brown-haired white male" of approximately "35–45 years of age, 5'8"–5'10" tall and weighing 180–200 lbs with an accent." *Id.*

When BH did not appear, Apothecary sought and obtained a certificate of default, *see* Dkt. Nos. 11, 14, and then moved for default judgment, *see* Dkt. No. 15. The court granted Apothecary's motion and entered default judgment against BH. *See* Dkt. Nos. 22–23. After writs of garnishment were entered against it, *see* Dkt. Nos. 27–28, BH entered a limited appearance through counsel to contest jurisdiction, *see* Dkt. No. 42.

The parties subsequently submitted declarations relating to the issue of service. Asif Shaikh, the owner of Apothecary, avers that on September 11, 2023, he sent a text message to

Avi Alhakim, the sole member of BH, informing him that Apothecary was preparing a lawsuit against BH. *See* Dkt. No. 45-1 ¶ 13. On October 26th, Apothecary's attorney sent BH a demand letter. *See id.* ¶ 15. On November 16th, the complaint was filed. *See* Dkt. No. 1. On December 1, 2023, Mr. Shaikh again texted Mr. Alhakim, informing him that Apothecary had filed suit against BH. *See* Dkt. No. 45-1 ¶ 22. Two weeks later, on December 14th, Mr. Shaikh once more texted Mr. Alhakim to inform him, "we are going to get default judgment against you today if you don't work with us." *Id*. ¶ 26. The two spoke by phone later that day, with Mr. Alhakim indicating that "he was aware of the lawsuit but that he did not have time to respond." *Id.* ¶¶ 27–28. The two briefly discussed Mr. Alhakim's $5,000 settlement offer, which Mr. Shaikh rejected. *See id.* The clerk's office entered a certificate of default four days later. *See* Dkt. No. 14. Mr. Shaik represents that throughout this period, Mr. Alhakim was busy setting up a new LLC, Swift Innovations; transferring BH's assets to Swift; directing BH's clients to pay invoices to Swift; and dissolving BH. *See* Dkt. No. 45-1 ¶¶ 14, 17, 24–25. With respect to the details of service, Mr. Shaikh states that he has "been to the building where Defendant was served" and that he recalls there being "only one door and a person at the front desk who knows the identity of the occupants and interacts with them." *Id.* ¶ 21.

      Mr. Alhakim avers that he knows no one named "Joe Cohen" and that the only agent designated to accept service of process for BH at any time was the New York Secretary of State. *See* Dkt. No. 60 ¶¶ 4–5. He describes BH's place of business as a "warehouse used by multiple businesses" with "no front desk" and "no employee of the building on site most of the time." *Id.* ¶ 4. And although Mr. Alhakim represents that he "was not 'aware' of the lawsuit before March 30, 2024," when BH's bank account was frozen under a writ of garnishment, he attributes his lack of knowledge to Mr. Shaikh's "not identify[ing] the court or the date the case was filed or

3

the date on which any response by me was due in any of the text messages or phone calls [Mr. Shaikh] references in his Declaration." *Id.* ¶ 2–3 (quotation marks in original).

Apothecary also produced promotional and registration materials associated with Mr. Alhakim's past businesses, property records, judicial records, and person-database searches that appear to suggest that Mr. Alhakim may have operated for some time under the name Avi Cohen, that he may have a brother named Joe Alhakim, and that Joe Alhakim may also use the name Joe Cohen. *See generally* Dkt. No. 66.

## II.

BH argues that it did not receive service of process in a manner authorized by law. If that is true, the default judgment must be set aside for lack of personal jurisdiction. For although "notice to the defendant and a constitutionally sufficient relationship between the defendant and the forum" are *necessary* prerequisites to personal jurisdiction, they are never alone *sufficient* to establish such jurisdiction. *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987). Rather, "[s]ervice of summons is the procedure by which a court . . . asserts jurisdiction over the person of the party served." *Id.* (cleaned up). And relief from a final judgment is "mandatory" if the court lacked personal jurisdiction when it entered judgment. *Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1166 (10th Cir. 2011).

Federal Rule of Civil Procedure 4(h) governs service of process on "a domestic or foreign corporation, or a partnership or other unincorporated association . . . subject to suit under a common name." As relevant here, that rule allows service either "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, *or* any other agent authorized by appointment or by law to receive service of process" or "in the manner prescribed by Rule 4(e)(1) for serving an individual," *i.e.*, "following state law for serving a summons in an

4

action brought in courts of general jurisdiction in the state where the district court is located *or where service is made.*" Fed. R. Civ. P. 4(e)(1), (h)(1)(A)–(B) (emphases added).

**A.**

The court first considers whether Apothecary served BH "by delivering a copy of the summons and of the complaint to an officer" or "a managing or general agent." BH's sole member is Avi Alhakim. *See* Dkt. No. 21 ¶ 4. It is undisputed that Apothecary never delivered process to him. And Apothecary has not alleged that BH has any other officers, non-statutory agents, or employees.

To be sure, some cases have held that the requirement of delivering copies of the summons and the complaint to an officer or a managing or general agent can be met by delivering these documents to an individual sufficiently close to an officer or agent so long as other assurances of actual notice are present and the equities tilt strongly in favor of the plaintiff. *See* 4A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1101 (4th ed. 2024). For instance, in *Koninklijke Luchtvaart Maat-Schappij N.V. v. Curtiss-Wright Corp.*, the district court held that service was proper under Rule 4(h) where a U.S. Marshal delivered process to a corporate officer's receptionist. *See* 17 F.R.D. 49, 50–52 (S.D.N.Y. 1955). The court explained that the marshal had acted reasonably, succeeded in bringing the complaint into the officer's hands, and thus assured actual notice. *See id.*

In a more recent case from this circuit, service was addressed to one of two authorized agents (a bank's cashier), but a second authorized agent (the bank's president) apparently signed the receipt of service instead. *See Kitchens v. Bryan County Nat'l Bank*, 825 F.2d 248, 254 (10th Cir. 1987). After holding that the second agent's signature satisfied the requirements for service under Oklahoma law, the court in *dicta* suggested that, given the "virtual certainty that the

5

defendants received actual notice," the usually requisite "strict compliance with notice statutes" could be relaxed in order to prevent a miscarriage of justice. *Id.* at 256.

Or take *Garcia v. Maersk, Inc.*, No. 03-cv-5697, 2005 WL 1492380 (E.D.N.Y. June 24, 2005). In facts oddly like those here, a process server arrived at the defendant's offices to find a single employee who identified himself only as "Joe" and who asserted that he was authorized to receive service. *Id.* at *1–2. Under Second Circuit precedent interpreting New York law to allow plaintiffs to rely on representations made by defendants' employees regarding who could accept service, the court held that service was proper. *See id.* at *2–3. In reaching this conclusion, the court disregarded the defendant's declaration averring that "no Joe 'Smith' works [here]" because the declaration did not expressly rule out the possibility that there may have been some other employee named "Joe" who matched the process server's description. *Id.* at *3. (Because the individual who accepted delivery of process would not provide the process server his last name, the process server had written in "Smith" on the receipt of service. *See id.* at *1.)

The court is not persuaded by the analogies Apothecary seeks to draw from these cases. For one thing, the holdings in *Kitchens* and *Garcia* both depended on state-specific law that does not apply here. For another, courts have been reluctant to extend the reasoning of *Koninklijke* beyond the specific factual context in which it arose. In *United States v. Mollenhauer Laboratories, Inc.*, for instance, the Seventh Circuit declined to extend the reasoning of *Koninklijke* to a case where delivery was made on "a person who was not even an employee of defendant, with nothing more than a vague understanding that [the summons and complaint] would at some future time be delivered to defendant's president." 267 F.2d 260, 262 (7th Cir. 1959).

More fundamentally, there are two problems with Apothecary's reliance on these cases. *Mollenhauer* hints at the first. Although Apothecary alleges that "Joe Cohen" was known to BH and may have even been Mr. Alhakim's brother, it nowhere alleges that "Joe Cohen" was BH's employee, much less its receptionist. To the contrary, the court understands the import of Mr. Shaikh's recollection to be that the "person at the front desk" was *not* an employee of the BH but was instead someone affiliated with the landlord who "kn[ew] the identity of the occupants and interact[ed] with them." Dkt. No. 45-1 ¶ 21. And that recollection accords with Mr. Alhakim's representation of the building as "a warehouse used by multiple businesses." Dkt. No. 60 ¶ 4. Apothecary cites no case, and the court is aware of none, where service on a non-employee was held to satisfy the requirement of service on "an officer[] [or] managing or general agent."

Second, the court is unmoved by Apothecary's reliance on the *Kitchens* dictum that "where a party receives 'actual notice of a dispute, we hold that service of process was accomplished.'" Dkt. No. 54 at 9 (quoting *Kitchens*, 825 F.2d at 257) (cleaned up). Again, that holding was expressly based on Oklahoma's "state notice statutes," which—in marked contrast to federal law—gave "[n]o rigid formula . . . as to the kind of notice that must be sent." *Kitchens*, 825 F.2d at 256 (quoting *Bomford v. Socony Mobil Oil Co.*, 440 P.2d 713, 718 (Okla. 1968)).

To the extent some federal courts have concluded that actual notice cured technical defects in service, they have done so only when "service of process was 'in substantial compliance with the formal requirements of the Federal Rules.'" *Freedom Watch, Inc. v. OPEC*, 766 F.3d 74, 81 (D.C. Cir. 2014) (quoting *Prewitt Enters., Inc. v. OPEC*, 353 F.3d 916, 924 n.14 (11th Cir. 2003)). That is, they have overlooked "minor, nonprejudicial defect[s]," *id.*, like the

7

lack of a return date for a responsive pleading, *see Sanderford v. Prudential Ins. Co. of Am.*, 902 F.2d 897 (11th Cir. 1990).

The court cannot brush aside Apothecary's failure to assure delivery of process to Mr. Alhakim as a "minor, nonprejudicial defect." Nor can it deem delivery to someone Apothecary speculates may be either a building manager, *see* Dkt. No. 45-1 ¶ 21, or even Mr. Alhakim's brother and past business partner, *see generally* Dkt. No. 66, to be "substantial compliance with the formal requirements of the Federal Rules."[1]

After all, requiring proper service of process is the "longstanding tradition [of] our system of justice" with roots in the common law. *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999). And "[a]lthough notice is 'an elementary and fundamental requirement of due process,' . . . it 'cannot by itself validate an otherwise defective service.'" *Freedom Watch*, 766 F.3d at 81 (quoting *Mullane v. Century Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950), and *Grand Ent. Grp. v. Star Media Sales, Inc.*, 988 F.2d 476, 492 (3d Cir. 1993)); *see also Omni Capital*, 484 U.S. at 104. Indeed, "one becomes a party officially, and is required to take action in that capacity, only upon service of a summons." *Murphy Bros.*, 526 U.S. at 350. Thus, "[i]n the absence of service . . . a court ordinarily may not exercise power over a party." *Id.*

## B.

Rule 4(h)(1)(B) alternatively permits service "by delivering a copy of the summons and of the complaint to . . . any other agent authorized by appointment or by law to receive service of

---

[1] The specific circumstances in which Rule 4 does permit service by delivery of process to an individual's family member are not present here. *See* Fed. R. Civ. P. 4(e)(2)(B) (permitting service on an individual by leaving process "*at the individual's dwelling or usual place of abode* with someone of suitable age and discretion *who resides there*").

process." It is an open question whether "by law" encompasses state law given Rule 4(h)(1)(A)'s parallel allowance of service under Rule 4(e)(1) in accordance with state law. *See* 4A WRIGHT & MILLER § 1101. The court need not resolve that question, however, because the only potential agents authorized "by appointment or by law" to accept service of process on BH's behalf that can be identified from the record before the court are the New York Secretary of State and (perhaps) the New Jersey filing office for foreign LLCs. And Apothecary nowhere alleges that the summons and complaint were delivered to either.

## C.

Finally, Rule 4(h)(1)(A) permits service on a corporation, partnership, or association "in the manner prescribed by Rule 4(e)(1) for serving an individual," *i.e.* by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." The court must accordingly determine whether BH was served in a manner authorized under either Utah or New Jersey law.

### 1.

The "state where the district court is located" is of course Utah. Utah's law of service mirrors the Federal Rules in relevant part, with the addition that "[i]f no officer or agent can be found within the state, and the defendant has, or advertises or holds itself out as having, a place of business within the state or elsewhere, or does business within this state or elsewhere," service may be made "upon the person in charge of the place of business." *Compare* Utah R. Civ. P. 4(d)(1)(E), *with* Fed. R. Civ. P. 4(h).

*In re Schwenke*, the Utah Supreme Court held insufficient the delivery of process to a "common-area receptionist" "not supervised or employed by" the defendant, "nor . . . authorized to accept service on behalf of the [defendant] or any other tenant in the building." 89 P.3d 117,

9

124 (Utah 2004). To be sure, the process server in *Schwenke*, unlike here, did not represent that he "received . . . assurances that the [document] would be delivered to the [defendant]." *Id.* But the court does not believe this representation would lead the Utah courts to a different conclusion here. In *Griffin v. Snow Christensen & Martineau*, the Utah Supreme Court summarized *Schwenke*'s interpretation of the Utah Rule governing service on a "managing or general agent" as requiring "service on an employee who 'played an integrated role within' the corporation and would thus be positioned to 'know what to do with' the complaint." 536 P.3d 91, 98 (Utah 2023) (quoting *Schwenke*, 89 P.3d at 124).

The court is aware of only one case separately addressing Utah's "person in charge" language. *See Gibbons & Reed Co. v. Standard Accident Ins. Co.*, 191 F. Supp. 174 (D. Utah 1960). There, the court found service on the defendant's insurance adjuster, listed in the Salt Lake City telephone directory under his employer's name, to be valid service on the person "in charge of" the "defendant company['s] . . . office or place of business within the state." *Id.* at 175–76. All prior and subsequent cases interpreting Utah's Rule 4 instead appear to understand the phrase "officer, . . . managing or general agent, or other agent," as used in the Rule, to include someone who is a "person in charge." These cases thus do not conduct a separate analysis of whether someone is a "person in charge" within the meaning of the Rule. Rather, they consider the import of this language, if at all, as part of an undifferentiated inquiry into whether someone falls within the scope of Rule 4(d)(1)(E). In *Beard v. White, Green & Addison Associates, Inc.*, for instance, the Utah Supreme Court interpreted "authorized agent" to mean someone "more than a mere employee" who is "in charge of some of [defendant's] property, operations, business activities, office, place of business or in some manner . . . responsible for or [has] control over [defendant's] affairs." 336 P.2d 125, 126 (Utah 1959). That court accordingly

10

concluded that delivery of process to an individual working at a mining claim who was not the mine's foreman did not suffice to effect service. *Id.*

In *Schwenke*, the court likewise did not separately analyze the "person in charge" language when deciding whether delivery of process to a receptionist satisfied Rule 4(d)(1)(E). *See* 89 P.3d at 123–25. To be sure, the court did cite case law interpreting Pennsylvania's rule permitting service on "the person for the time being in charge" of "any office or usual place of business of the defendant," Penn. R. Civ. P. 402, in support of the proposition that a "receptionist at [the] common entrance of [an] office building was not a 'person in charge' for purposes of the state service of process rule," *In re Schwenke*, 89 P.3d at 123 (citing *Grand Ent. Grp.*, 988 F.2d at 486). But the court offered this citation not as part of a discrete analysis of the "person in charge" language, but as further support of its undifferentiated conclusion that, under Rule 4(d)(1)(E), "proper service is not effected by serving the corporation's receptionist." *Id.* (cleaned up).

Apothecary has given this court no reason to believe that delivery of the summons and complaint to "Joe Cohen" constituted proper service under Utah's Rule 4. The evidence presented, suggesting that "Joe Cohen" was a non-employee receptionist in a multi-business warehouse, does not come close to establishing that he "played an integrated role" in BH or was "the person in charge of the place of business." And in marked contrast to *Gibbons & Reed*, nothing in the record here suggests that BH "authorized [Joe Cohen] to hold out to the public that the company was maintaining an office . . . in its own name and right but under his charge." 191 F. Supp. at 176.

## 2.

"[T]he state . . . where service [wa]s made"—or at least attempted—is New Jersey. New Jersey law permits service "[u]pon partnerships and unincorporated associations . . . by serving a

11

copy of the summons and complaint . . . on an officer or managing agent" in "the manner prescribed by paragraph (a)(1) of this rule," *i.e.*, "by delivering a copy of the summons and complaint to the individual personally . . . or by delivering a copy thereof to a person authorized by appointment or by law to receive service of process on the individual's behalf." N.J. Ct. R. 4:4-4(a)(1), (5).

The parties cite and the court is aware of no cases that suggest that New Jersey law is any more accommodating of the manner of attempted service here than is federal or Utah law. Again, the summons and complaint were not delivered to Avi Alhakim personally. And Apothecary has presented no reason to believe that "Joe Cohen" was BH's "officer or managing agent" or was "authorized by appointment or by law to receive service" on behalf of such an officer or agent. Indeed, the Appellate Division has squarely held that attempted service by delivery of process to a "receptionist . . . not authorized to accept service on [defendant's] behalf" and who the defendant represents is not an employee is "defective" under Rule 4:4-4 and incompatible with "American due process standards." *Vama F.Z. Co. v. Pacific Control Sys., LLC*, No. A-1020-19T1, 2021 WL 191555, at *3, *6 (N.J. Super. Ct. App. Div. Jan. 20, 2021); *see also Sherman v. Royal Pro Heating & Cooling, LLC*, No. 23-2075 (ES) (LDW), 2024 WL 5118426, at *2 (D.N.J. Dec. 16, 2024) (holding that delivery of process to an individual lacking clear authorization to accept service on defendant's behalf was insufficient to effect service "under the applicable federal or New Jersey court rules").

Alternatively, New Jersey requires all foreign LLCs to register with the state filing office and provide the information necessary to facilitate service of process. *See* N.J. Stat. Ann. §§ 42:2C-14(b), 42:2C-58(a). If an LLC fails to do so or if a process server is unable to find an

authorized agent at the listed address for service, New Jersey law permits service to be made at the New Jersey filing office. *See id.* § 42:2C-17(b). Apothecary did not attempt to do so.

\* \* \*

Rule 4(h) and the rules it incorporates by reference—Federal Rule 4(e)(1), Utah R. Civ. P. 4(d)(1)(E), and NJ. Ct. R. 4:4-4(a)(5)—provided Apothecary ample options to effect service of process on an evasive defendant without an easily reachable agent. But Apothecary availed itself of none of these options. Instead, it appears to have simply delivered a copy of the summons and complaint to the first person its server found inside the multi-business warehouse in which BH's office was located. The court suspects that Mr. Alhakim was well aware of the lawsuit against BH. But because Apothecary failed substantially to comply with the procedural requirements of service, the court never obtained personal jurisdiction over BH. It follows that the default judgment entered against BH is void.

For the foregoing reasons, Docket Number 43, BH's Motion to Set Aside Judgment as Void and to Vacate Writs of Garnishment is **GRANTED**.

Given the disposition of that motion, Docket Number 46, Amended Motion to Alter Judgment to Add Swift Innovations and Avi Alhakim as Judgment Debtors; Docket Number 68, Motion for Reconsideration; and Docket Number 81, Motion for Initial Scheduling Conference are **DENIED**.

For the same reasons, Docket Number 70, Motion to Dismiss for Lack of Jurisdiction; Docket Number 74, Motion for Discovery; and Docket Number 76, Motion for Extension of Time to File Response/Reply are **DENIED AS MOOT**.

Similarly, Docket Number 51, Motion for Interpleader Deposit of Garnished Funds is **DENIED WITHOUT PREJUDICE**.

Finally, Docket Number 49, Amended Motion to Quash Subpoena to Bank of America; and Docket Number 65, Amended Motion for Return of Property Pre-Trial are **GRANTED**.

**IT IS SO ORDERED.**

Dated this 31st day of March, 2025.

BY THE COURT:

_____
Howard C. Nielson, Jr.
United States District Judge