Jordan K. Cameron **(12051)**
**CAMERON RINGWOOD, LC**
6975 South Union Park Avenue
Suite 600
Cottonwood Heights, UT 84047
Telephone: (801) 845-0087
Email: jordan@cameronringwood.com

**Attorneys for Plaintiff**

UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| APOTHECARY MOVEMENT, LLC, a Utah limited liability company,<br><br>    Plaintiff,<br><br>vs.<br><br>BH ELEGANT LINENS, LLC dbas AA WHOLESALE DEALS a New York limited liability company,<br><br>    Defendant. | Case No.: 2:23cv00845-HCN-DAO<br><br>**OPPOSITION TO MOTION TO DISMISS [DOC 91]**<br><br><br><br><br><br><br><br>Judge Howard C. Nielson, Jr. |

COMES NOW, Plaintiff, through counsel, and respectfully submits this *Opposition to Motion to Dismiss* (Doc 91) together with a *Declaration of Asif Shaikh* ("*Shaikh Decl.*") as Exhibit 1 hereto. As argued in its *Notice of Insufficiency of Evidence and Motion for Jurisdictional Discovery* (Doc 74), which arguments are incorporated herein, Plaintiff has not had the benefit of jurisdictional discovery, and may lack sufficient evidence to fully respond to Defendant's challenge to personal jurisdiction. Notwithstanding, Plaintiff files this *Opposition*.

1

**Introduction and Requested Disposition**

Regarding personal jurisdiction, the Defendant waived their challenge to personal jurisdiction through their active involvement in this case to date. Additionally, Defendant has sufficient contacts with this forum under both the continuing relationship and harmful effects tests to support a finding of specific personal jurisdiction. Plaintiff respectfully requests that this Court deny the *Motion*.

**Facts**

1.      Defendant, BH Elegant Linens, was organized by a single owner, Avi Alhakim, on November 23, 2020. (*See Organization Documents*, Exhibit B, hereto).

2.      BH Elegant Linens' address is 55 Talmage Road, Edison, NJ 08817. (*See id*.)

3.      On July 15, 2022, Defendant initiated contact with Plaintiff, a Utah company, through Amazon. (*See Shaikh Decl.* at ¶3; *see also* Exhibit 1 to *Shaikh Decl.*).

4.      Plaintiff's Amazon profile identified Plaintiff as a Utah business with its location in West Valley City, Utah. (*See Shaikh Decl.* at ¶4; *see also* Exhibit 2 to *Shaikh Decl.*).

5.      Defendant offered its business services to Plaintiff which consisted of providing goods that Plaintiff could sell on its Amazon store. (*See Shaikh Decl.* at ¶5; *see also* Exhibit 1 to *Shaikh Decl.*).

6.      As part of their ongoing negotiation, through WhatsApp, Defendant continually sent deals (*i.e.,* UPCs and item costs) to Plaintiff for Plaintiff to review and from which Plaintiff could select items to sell. (*See Shaikh Decl.* at ¶6; *see also* Exhibit 3 to *Shaikh Decl.*).

7.      Defendant represented that the goods were new and authentic. (*See Shaikh Decl.* at ¶7)

8.    Plaintiff and Defendant negotiated that Plaintiff would pick items it would like to sell and offer the items for sale via its Amazon store operating from Utah. (*See id.* at ¶8).

9.    All customer orders for goods would come through Plaintiff's Amazon storefront operated from Utah. (*See id.* at ¶9).

10.    All decision-making regarding the sales listings and sales would occur in Utah, by Plaintiff. (*See id.* at ¶10).

11.    Plaintiff and Defendant would then coordinate regarding the fulfillment of orders, which included Defendant's shipping new goods into Utah and also directly to Amazon on Plaintiff's behalf. (*See id.* at ¶11).

12.    Defendant would then invoice Plaintiff in Utah. (*See id.* at ¶12).

13.    Plaintiff and Defendant did not establish an end date of their relationship. Rather, they understood that their relationship would continue in the long term with obligations extending over a long period of time. (*See id.* at ¶13).

14.    So long as the relationship was beneficial to both parties, Defendant would act in a continuing role of providing deals to Plaintiff, allowing Plaintiff to select the deals it wanted to sell, and then providing the new goods to Plaintiff and assisting in the fulfilment of orders for Plaintiff. (*See id.* at ¶14).

15.    In or around August 2022, pursuant to their negotiated relationship, Defendant began supplying goods directly to Plaintiff in Utah and also to Amazon warehouses on Plaintiff's behalf. (*See id.* at ¶¶15-17; *see also Exhibit 4, 5, 6 to Shaikh Decl.*).

16.    For twelve months, Defendant supplied goods for order fulfillment to Plaintiff, which orders were obtained by Plaintiff through its Amazon store managed from Utah. (*See Shaikh Decl.* at ¶18).

17.     In total Defendant supplied 22,791 distinct units across 43 transactions to Plaintiff pursuant to their relationship. (*See Shaikh Decl.* at ¶19; *see also Exhibit 4 and 5 to Shaikh Decl.*).

18.     As explained in the *Amended Complaint*, among the foregoing transactions were goods that were not new, contrary to Defendant's representations. (*See Shaikh Decl.* at ¶20).

19.     Additionally, Plaintiff received customer complaints arising from the goods shipped directly to Utah including Tom Ford cologne. (*See id.* at ¶21).

20.     Consumers complained about the quality and smell of the cologne, and after inspection, it was determined that the cologne was likely fake. (*See id.* at ¶22).

21.     As part of its ongoing relationship, Defendant sold and shipped 160 units of the fake cologne to Plaintiff in Utah for which Plaintiff paid $21,400. (*See Shaikh Decl.* at ¶23; *see also Exhibit 4 and 5 to Shaikh Decl.*).

22.     Defendant continuously billed Plaintiff by directing invoices to Plaintiff in Utah (*See Shaikh Decl.* at ¶24; *see also Exhibit 5 to Shaikh Decl.*).

23.     Over the life of the relationship, Defendant invoiced Plaintiff the total sum of $889,158, which Plaintiff paid from Utah. (*See Shaikh Decl.* at ¶25; *see also Exhibits 4 and 5 to Shaikh Decl.*).

24.     In or around August 2023, Amazon suspended Plaintiff's seller account and cancelled its pending sales. (*See Shaikh Decl.* at ¶26).

25.     Amazon took these measures after it was discovered that various goods supplied by Defendant were not as advertised, and that inventory quantities were misstated. The goods were not new, rather they were used and/or refurbished. (*See id.* at ¶27).

26.     Rather than providing new items, as was required by their agreement, Defendant supplied refurbished, used or fake goods. (*See id.* at ¶28).

27.    In a letter to Amazon of August 28, 2023, Defendant acknowledged fault for providing refurbished goods when Plaintiff "had only ordered new, unopened items in their original packaging." (*See Letter*, <u>Exhibit C</u>, hereto)

28.    In September, the Parties continued their discussion regarding this dispute via text in which Plaintiff stated, "Hope you can understand my situation. Because of wrong products and your mistake, my livelihood is gone." (*See Text*, <u>Exhibit D</u>, hereto).

## Arguments

I.    THE COURT SHOULD EXTEND THE DEADLINE FOR SERVICE OF PROCESS FOR GOOD CAUSE.

Rule 4(m) of the Federal Rules of Civil Procedure states,

If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m)

Here, good cause exists for the delays of service of process.

Plaintiff, in good faith, believed it served the Defendant on November 22, 2024, five days after the Summons was issued. (*See* Docs 6, 8). The individual who accepted service, Joe Cohen, expressly stated that he was authorized to accept service. (*See* Doc 8). It was not until this Court's May 31, 2025 (Doc 86) Ruling on Defendant's challenge to sufficiency of service, that Plaintiff learned that, in the Court's opinion, service had not yet been affected. Thereafter, Plaintiff served Defendant on April 10, 2025, within 11 days of this Court's order quashing service.

Because a dismissal under Rule 4(m) is without prejudice, a dismissal would only delay this matter further, as Plaintiff would refile and serve Defendant again. Efficiency dictates that the matter not be dismissed and allowed to moved forward based on service on April 10, 2025.

## II. DEFENDANT WAIVED ITS CHALLENGE TO PERSONAL JURISDICTION.

"A defect in the district court's jurisdiction over a party . . . is a personal defense which may be asserted or waived by a party." *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1202 (10th Cir. 1986). "Objections to personal jurisdiction must be asserted in the answer or in a pre-answer motion. If a party files a pre-answer motion and fails to assert the defenses of lack of personal jurisdiction or insufficiency of service, he waives these defenses." *Fed. Deposit Ins. Corp. v. Oaklawn Apartments*, 959 F.2d 170, 174–75 (10th Cir. 1992) (citing Fed. R. Civ. P. 12(b), 12(h)(1)).

Further, "[i]f a party makes a motion under Rule 12 but omits therefrom any defense or objection then available which can be raised by motion, that party shall not thereafter make a motion based on the defense or objection so omitted." *Travelers Cas. & Sur. Co. of Am. v. Unistar Fin. Serv. Corp.*, 35 F. App'x 787, 789 (10th Cir. 2002) (citing Fed. R. Civ. P. 12(g) (cleaned up)). "In addition, Rule 12(h)(1) specifically states that the defense of lack of personal jurisdiction is waived if omitted from a motion in the circumstances described in Rule 12(g)." *Id*. (cleaned up). Additionally, a party waives jurisdiction when it seeks affirmative relief from the court. *See Hunger U.S. Special Hydraulics Cylinders Corp. v. Hardie-Tynes Mfg. Co.,* No. 99–4042, 2000 WL 147392 (10th Cir. Feb. 4, 2000) (reasoning that defendant "actively participated in the litigation and sought affirmative relief from the court" thereby waiving personal jurisdiction defense).

Here, Defendant has waived its challenges to personal jurisdiction through its filing of motions under Rule 12 without objecting to jurisdiction, and their active participation and seeking affirmative relief from the court in this case.

In examining a party's substantive defenses and challenges, titles are insignificant; rather, it is the substance that counts. *United States v. Palmer*, No. 2:12-cr-00663-RJS, 2022 WL 16553184, at *2 (D. Utah Oct. 31, 2022), *certificate of appealability denied,* No. 23-4012, 2023 WL 3883973 (10th Cir. June 8, 2023) ("The court is not bound by a motion's title; it is the substance that counts."). It follows that, despite brief titles and references to jurisdiction in various filings, until this *Motion*, Defendant has not substantively challenged jurisdiction, but rather, has consented to the proceedings of this court for more than a year.

In its *Motion to Set Aside Judgment and Vacate Writs of Garnishment* filed on April 4, 2024 (Doc 30), Swift Innovations challenged service of process and certain writs issued against Defendant. (*See* Doc 30). That motion acknowledges that "Plaintiff commenced this action on November 22 by filing the Complaint against a single Defendant: BH elegant Linens." (Doc. 30 at Fact 1). Yet, the motion appears to have been filed by a non-party challenging the underlying action and seeking affirmative relief vis-à-vis court-issued writs. Of course, a non-party lacks standing for any such challenge, and the ultimate beneficiary of such challenge could only be the Defendant.

A challenge to service is brought under Rule 12(b)(4). Nowhere in that motion did Defendant raise any challenge to personal jurisdiction or present any minimum contacts analysis, any personal jurisdiction analysis arising under *International Shoe*, or any other personal jurisdiction jurisprudence. Accordingly, in bringing a Rule 12 challenge, but failing to substantively challenge personal jurisdiction, the Defendant waived their personal jurisdiction

challenge. Similarly, in seeking affirmative relief regarding writs, but failing to challenge jurisdiction, the Defendant waived their personal jurisdiction challenge.

Thereafter, on April 17, 2024, Defendants filed a *Motion to Stay Enforcement Proceedings.* (*See* Doc 39). Despite its title, the motion sought affirmative relief in the form of a request that this Court set aside judgment specifically as to Defendant "Swift Innovations as a purported d/b/a/ of" Defendant—in other words, as to Defendant. (*See id.* at 4). As with Doc 30, this motion sought affirmative relief from the court, but did not challenge jurisdiction.

On April 22, 2024, the Defendant filed a joint *Motion to Set Aside Judgment and to Vacate Writs*. (*See* Doc 43). As with Doc 30, the Defendant challenged sufficiency of service of process. Though the motion does not mention Rule 12, the motion is construed by its substance, and it is a challenge to the sufficiency of service which arises under Rule 12(b)(4). As with Doc 30, nowhere in the motion did the Defendant present any minimum contacts analysis, any personal jurisdiction analysis arising under *International Shoe*, or any other personal jurisdiction jurisprudence. Therefore, despite that motion ostensibly claiming to challenge personal jurisdiction, the motion was not in substance a motion challenging personal jurisdiction and should not be construed as such. *See Workers Comp. Fund v. Argonaut Ins. Co.*, 2011 UT 61, ¶ 10, 266 P.3d 792. In bringing a Rule 12 challenge to service of process, but failing to substantively challenge personal jurisdiction—i.e., the moving party's minimum contacts with the State of Utah—the Defendant waived their personal jurisdiction challenge.

On April 26, 2024, Defendant filed a *Motion to Quash* which sought affirmative relief from this court. (*See* Doc 48). Nowhere in that *motion* did Defendant challenge this court's personal jurisdiction over it, but rather, it only raised sufficiency of service of process.

Only after these various motions, multiple requests for relief from the court, and consistent involvement in this litigation, did the Defendant challenge personal jurisdiction. But the challenge is long overdue as it had long-since been waived.

Because the Defendant has actively participated in litigation in front of this Court, has failed to substantively challenge personal jurisdiction despite making other Rule 12 challenges, and has sought relief from this Court, this Court should deem its challenge to personal jurisdiction waived, and deny their *Motion*.

III.    DEFENDANT HAS SUFFICIENT MINIMUM CONTACTS WITH UTAH FOR
        SPECIFIC JURISDICTION.

To obtain personal jurisdiction over a nonresident defendant, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment. *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1074 (10th Cir. 1995). Accordingly, Utah law governs the exercise of personal jurisdiction over defendants, so long as it satisfies due process. *See id.*; *see also Soma Med. Int'l v. Standard Chartered Bank¸* 196 F.3d 1292, 1295 (10th Cir. 1999).

In addressing a motion to dismiss for lack of personal jurisdiction, Plaintiff's factual allegations must be accepted as true and all reasonable inferences to be drawn from those facts must be made in the light most favorable to plaintiff. *See Pohl, Inc. of Am. v. Webelhuth*, 2008 UT 89, ¶ 2, 201 P.3d 944. Where the Defendant challenges jurisdiction through declaration or other evidence, the Plaintiff is entitled to rebut the evidence through its own filings, and need only make a prima facie showing of personal jurisdiction based on that evidence. *See OMI Holdings, Inc. v. Royal Ins. Co. of Canada,* 149 F.3d 1086, 1091–92 (10th Cir. 1998). Moreover, "any disputes in the documentary evidence are resolved in [plaintiff's] favor." *Neways, Inc. v.*

*McCausland*, 950 P.2d 420, 422, 424 (Utah 1997) (citation omitted); *see also Hafen v. Strebeck*, 338 F. Supp. 2d 1257, 1260 (D. Utah 2004).

Although the plaintiff bears the initial burden to establish personal jurisdiction, "where, as here, the issue is raised early on in litigation, based on pleadings (with attachments) and affidavits, that burden can be met by a prima facie showing." *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011); *see also Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008). Factual disputes must be resolved in the Plaintiff's favor. *Neways*, 950 P.2d at 422.

Because the Utah long-arm statute is coterminous with the exercise of jurisdiction under the U.S. Constitution, due process governs the inquiry. However, it is important to note that under Utah's long-arm statute,

> any person or personal representative of the person, whether or not a citizen or resident of this state, who, in person or through an agent, does any of the following enumerated acts is subject to the jurisdiction of the courts of this state as to any claim arising out of or related to: (1) the transaction of any business within this state; (2) contracting to supply services or goods in this state; (3) the causing of any injury within this state . . . ."

Utah Code. § 78B-3-205. Notably, the Utah long-arm statute "must be extended to the fullest extent allowed by due process of law." *Synergetics v. Marathon Ranching Co. Ltd*., 701 P.2d 1106, 1110 (Utah 1985); *See also Parry v. Ernst Home Ctr. Corp.*, 779 P.2d 559, 661; *Bradford v. Nagle*, 763 P.2d 791, 793.

Under a due process analysis, "defendants must have 'minimum contacts' with the forum state, such that having to defend a lawsuit there would not 'offend traditional notions of fair play and substantial justice.'" *Dudnikov*, 514 F.3d at 1070 (10th Cir. 2008) (quoting *Int'l Shoe v. Washington*, 326 U.S. 310, 316 (1945)). Personal jurisdiction may be either general or specific. *See id.* In this case, Plaintiff relies on the specific personal jurisdiction framework, which

10

requires three elements: first, Defendant has "purposefully directed" its activities at Utah; second, Plaintiff's injuries "arise out of" or "relate to" those activities; and third, exercising personal jurisdiction over Defendant is consistent with "traditional notions of fair play and substantial justice." *See Hood v. Am. Auto Care, LLC*, 21 F. 4th 1216, 1220–21 (10th Cir. 2021) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) and *Bristol-Meyers Squibb Co. v. Sup. Ct. of Cal.*, 137 S. Ct. 1773 (2017)). All three elements are satisfied here.

## A. Purposeful Direction

There is not one conclusive test that courts employ to determine whether a party has purposefully directed activity toward a forum state. In fact, the Tenth Circuit has identified at least three viable frameworks, each of which it is held satisfy the purposeful direction element. *See Old Republic Ins. Co. v. Continental Motors, Inc.*, 877 F.3d 895, 905 (10th Cir. 2017). The three frameworks are: *"*(1) continuing relationships with forum state residents ('continuing relationships'); (2) deliberate exploitation of the forum state market ('market exploitation'); and (3) harmful effects in the forum state ('harmful effects')." *Id*. at 905.

This case involves both contract and tort claims. "In cases involving contractual contacts between the defendant and forum state residents, the purposeful direction analysis often employs the first framework" (*i.e.*, continuing relationship). *Id*. For jurisdiction based on torts, "a tort is incomplete without an injury, and thus the place of injury is an important component of the minimum contacts analysis. Moreover, 'within the rubric of [purposeful] availment the Court has allowed the exercise of jurisdiction over a defendant whose only contact with the forum state is the purposeful direction of a foreign act having effect in the forum state.'" (*i.e., the harmful effects test.) ClearOne, Inc. v. Revolabs, Inc*., 2016 UT 16, ¶ 15 n.33, 369 P.3d 1269 (emphasis in original).

1.  Continuing Relationship

Under the continuing relationship framework, the typical purposeful direction analysis looks to the out-of-state defendant's "continuing relationships and obligations with citizens of [the forum state]." *Burger King,* 471 U.S. at 473, 105 S.Ct. 2174. "The court evaluates the parties' 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing ... in determining whether the defendant purposefully established minimum contacts within the forum.'" *Old Republic Ins. Co.*, 877 F.3d at 905 (citing *Burger King*, 471 U.S. at 479, 105 S.Ct. 2174). "An out-of-state defendant's solicitations of or direct communications with forum state residents also provide "some evidence" suggesting purposeful direction." *Id.* (citing *Pro Axess, Inc. v. Orlux Distribution, Inc.*, 428 F.3d 1270, 1277 (10th Cir. 2005)).

Here, Defendant reached out beyond its state many times to create a continuing relationship and ongoing obligations with Plaintiff in Utah.

First, Defendant initiated contact with Plaintiff, a Utah company, through an Amazon message directed at Plaintiff. (*See Shaikh Decl.* at ¶3; *see also* Exhibit 1 to *Shaikh Decl.*). At the time, Plaintiff's Amazon business profile clearly identified it as being located in Utah. (*See Shaikh Decl.* at ¶4; *see also* Exhibit 2 to *Shaikh Decl.*). In Defendant's message, Defendant offered its business services to Plaintiff who it knew, or reasonably should have known, was in Utah. (*See Shaikh Decl.* at ¶5; *see also* Exhibit 1 to *Shaikh Decl.*).

Second, as part of their ongoing negotiation, through WhatsApp, Defendant continually initiated communication be sending deals (*i.e.,* UPCs and item costs) to Plaintiff for Plaintiff to review and from which Plaintiff could select items to sell. (*See Shaikh Decl.* at ¶6; *see also*

Exhibit 3 to *Shaikh Decl.*). Defendant represented that the goods were new and authentic. (*See Shaikh Decl.* at ¶7)

Third, Plaintiff and Defendant negotiated that Plaintiff would pick items it would like to sell and offer the items for sale via its Amazon store operating from Utah. (*See id.* at ¶8). All customer orders for goods would come through Plaintiff's Amazon storefront operated from Utah, and all decision-making regarding the sales listings and sales would occur in Utah, by Plaintiff. (*See id.* at ¶¶9-10). Plaintiff and Defendant would then coordinate regarding the fulfillment of orders, which included Defendant's shipping new goods into Utah and also directly to Amazon on Plaintiff's behalf. (*See id.* at ¶11). Defendant would then invoice Plaintiff in Utah. (*See id.* at ¶12).

Plaintiff and Defendant did not establish an end date of their relationship. Rather, they understood that their relationship would continue in the long term with obligations extending over a long period of time. (*See id.* at ¶13). So long as the relationship was beneficial to both parties, Defendant would act in a continuing role of providing deals to Plaintiff, allowing Plaintiff to select the deals it wanted to sell, and then providing the new goods to Plaintiff and assisting in the fulfilment of orders for Plaintiff. (*See id.* at ¶14).

Fourth, in or around August 2022, pursuant to their negotiated relationship, Defendant began supplying goods directly to Plaintiff in Utah and also to Amazon warehouses on Plaintiff's behalf. (*See Shaikh Decl.* at ¶¶15-17; *see also Exhibit 4, 5, 6 to Shaikh Decl.*). For twelve months, Defendant supplied goods for order fulfillment to Plaintiff, which orders were obtained by Plaintiff through its Amazon store managed from Utah. (*See Shaikh Decl.* at ¶18). In total Defendant supplied 22,791 distinct units across 43 transactions to Plaintiff pursuant to their relationship. (*See Shaikh Decl.* at ¶19; *see also Exhibit 4 and 5 to Shaikh Decl.*).

13

The foregoing amounts to a continuing course of dealing between Plaintiff and Defendant which was established through Defendant's solicitation of, and targeted negotiation with, a Utah company, satisfying the continuing relationship framework.

## 2. Harmful Effects

The "harmful effects" test employed in the Tenth Circuit is based on *Calder v. Jones*, 465 U.S. 783 (1984). *See Shrader*, 633 F.3d at 1239. Under this test, purposeful direction is established if three showings are made: (i) the defendant commits an "intentional action"; (ii) that is "expressly aimed at the forum state"; (iii) with harmful effects in the forum state. *See Dudnikov*, 514 F.3d at 1072. As demonstrated below, each of these elements is met in this case.

### i. Defendant's conduct is intentional.

The requirement that Defendant acted intentionally is easily satisfied, and more importantly not disputed in Defendant's *Motion*. For purposes of this element, Plaintiff need only demonstrate that the activities giving rise to personal jurisdiction—*i.e.*, Defendant's selling of goods to Plaintiff, and assisting in fulfilling order for Plaintiff, was intentional. (*See Am. Compl.* at ¶¶ 42-72)*, see Newsome v. Gallacher*, 722 F.3d 1257, 1268 (10th Cir. 2013) (holding that this element "require[d] little discussion" where there was no evidence that "defendants acted unintentionally when they took" the actions complained of).

Defendant does not argue that the conduct was accidental nor can it. As explained in detail in Section III.A.1, *supra*, Defendant initiated contact with Plaintiff and negotiated a relationship with Plaintiff pursuant to which Defendant willfully sold goods to Plaintiff who he knew was in Utah. In some instances, Defendant shipped goods to Utah. In others, Defendant shipped goods to Amazon on behalf of Plaintiff in Utah.

14

As explained in the *Amended Complaint*, among the foregoing transactions were goods that were not new, contrary to Defendant's representations. (*See Shaikh Decl.* at ¶20). In a letter written to Amazon, Defendant took "full responsibility" for its conduct and admitted, "we failed to provide clear information that the item in question, the Netgear N600 Cable Modem Router (C3700), was refurbished, even though Apothecary had only ordered New, unopened items in their original packaging." (*See* Exh. C).

There is no genuine dispute that Defendant acted intentionally in selling products to Plaintiff, and shipping products to and for Plaintiff that were not new. In other words, when the allegations of the *Complaint* are accepted as true, and the available evidence of Defendant's conduct considered, there is no genuine dispute that Defendant engaged in intentional conduct.

      ii.   <u>Defendant's conduct was expressly aimed at Utah</u>

Defendant's primary argument against jurisdiction appears to be that it does not knowingly aim any of its business activities toward Utah residents. (*See generally Motion*). This argument is belied by available evidence in this case.

Specifically, Defendant initiated contact with Plaintiff, a Utah company, through an Amazon message directed at Plaintiff. (*See Shaikh Decl.* at ¶3; *see also* Exhibit 1 to *Shaikh Decl.*). At the time, Plaintiff's Amazon business profile clearly identified it as being located in Utah. (*See Shaikh Decl.* at ¶4; *see also* Exhibit 2 to *Shaikh Decl.*). In Defendant's message, Defendant offered its business services to Plaintiff who he knew, or reasonably should have known, was in Utah. (*See Shaikh Decl.* at ¶5). Knowing Plaintiff was in Utah, Defendant engaged in continual negotiation through WhatsApp. (*See id.* at ¶6).

In or around August 2022, pursuant to the negotiated relationship described above, Defendant began supplying goods directly to Plaintiff in Utah and also to Amazon warehouses

on Plaintiff's behalf. (*See Shaikh Decl.* at ¶¶15-17; *see also Exhibit 4, 5, 6 to Shaikh Decl.*). For twelve months, Defendant supplied goods for order fulfillment to Plaintiff, which orders were obtained by Plaintiff through its Amazon store managed from Utah. (*See Shaikh Decl.* at ¶18). In total Defendant supplied 22,791 distinct units across 43 transactions to Plaintiff pursuant to their relationship. (*See Shaikh Decl.* at ¶19; *see also Exhibit 4 and 5 to Shaikh Decl.*).

Defendant continuously billed Plaintiff by directing invoices to Plaintiff in Utah (*See Shaikh Decl.* at ¶24; *see also Exhibit 5 to Shaikh Decl.*). Over the life of the relationship, Defendant invoiced Plaintiff the total sum of $889,158, which Plaintiff paid from Utah. (*See Shaikh Decl.* at ¶25; *see also Exhibits 4 and 5 to Shaikh Decl.*).

As explained in the *Amended Complaint*, among the foregoing transactions were goods that were not new, contrary to Defendant's representations. (*See Shaikh Decl.* at ¶20). Plaintiff received customer complaints arising from the goods shipped directly to Utah by Defendant, including Tom Ford cologne. (*See id.* at ¶21). Consumers complained about the quality and smell of the cologne, and after inspection, it was determined that the cologne was likely fake. (*See id.* at ¶22). As part of its ongoing relationship, Defendant sold and shipped 160 units of the fake cologne to Plaintiff in Utah for which Apothecary paid $21,400. (*See id.* at ¶23; *see also Exhibit 4 and 5 to Shaikh Decl.*).

At all times, Defendant knew where Plaintiff was located and expressly aimed the conduct which forms the basis for this dispute at Utah.

There is no genuine dispute that Defendant engaged in conduct expressly aimed at Utah.

     iii.   <u>Defendant's activities have resulted in harm in Utah.</u>

The harmful effects element of this test is not materially distinguishable from the "arising from" requirement as described in *Old Republic*, 877 F.3d at 904, and *Burger King Corp. v.*

16

*Rudzewicz*, 471 U.S. 462, 472 (1985). In an effort to reduce redundancy, this analysis is set forth in Section III.B, herein, which demonstrates that this element is satisfied. Moreover, it is important to note that, Defendant cannot dispute that his conduct resulted in harm to Plaintiff in Utah.

B.  **The lawsuit arises out of and/or relates to Defendant's activities affecting Utah.**

The second element for personal jurisdiction requires that there be some connection between the defendant's action and the plaintiff's injury that is not too remote. *See Burger King*, 471 U.S. at 472. In other words, Plaintiff's injuries must "arise out of or relate to [Defendant's] activities." *Pro Axess, Inc. v. Orlux Dist. Inc.*, 428 F.3d 1270, 1278–79 (10th Cir. 2005) (citing *Burger King*, 471 U.S. at 472). The Tenth Circuit has employed two separate tests to analyze causation: the "but-for" and proximate causation tests. *See Dudnikov*, 514 F.3d at 1078 (holding that the "but-for" test inquires whether "any event in the causal chain leading to the plaintiff's injury is specifically related to the claim," while the proximate cause test examines "whether any of the defendant's contacts with the forum are relevant to the merits of the plaintiff's claim"). In this case, both tests are satisfied.

Defendant's contacts with Utah in this case include: soliciting business from Utah business such as Plaintiff, engaging in continuous negotiation with Plaintiff in Utah, during which Defendant made false representations regarding the quality of its goods, selling goods to a Utah business which did not possess the characteristics Defendant claimed, shipping goods to Utah, fulfilling orders on behalf of Plaintiff in Utah, and continuously invoicing Plaintiff in Utah (*i.e.,* accepting payment from a Utah company).

In or around August 2023, Amazon suspended Plaintiff's seller account and cancelled its pending sales. (*See Shaikh Decl.* at ¶26). Amazon took these measures after it was discovered

that various goods supplied by Defendant were not as advertised, and that inventory quantities were misstated. The goods were not new, rather they were used and/or refurbished. (*See id.* at ¶27). Rather than providing new items, as was required by their agreement, Defendant supplied refurbished, used or fake goods. (*See id.* at ¶28).

Additionally, Plaintiff received customer complaints arising from the goods shipped directly to Utah, including Tom Ford cologne. (*See id.* at ¶21). Consumers complained about the quality and smell of the cologne, and after inspection, it was determined that the cologne was likely fake. (*See id.* at ¶22). As part of its ongoing relationship, Defendant sold and shipped 160 units of the fake cologne to Plaintiff in Utah for which Apothecary paid $21,400. (*See id.* at ¶23; *see also Exhibit 4 and 5 to Shaikh Decl.*).

But for these activities, Plaintiff would not have been injured and its claims would not have arisen. Moreover, these contacts, individually and collectively, are relevant and fundamental to Plaintiff's claims.

Defendant's business model is to offer goods to companies who can sell them via Amazon, and have such orders fulfilled by Defendant. As part of the business model, Defendant takes advantage of the state of Utah by forging customer relationships with Utah companies like Plaintiff. The process of selling goods to, and fulfilling order for, Plaintiff is the direct cause of the harm alleged by Plaintiff in the *Complaint* and has resulted in very real financial harm to Plaintiff including the termination of its business by Amazon. Such actions are sufficient to demonstrate causation, and therefore satisfy this element of personal jurisdiction.

### C. Exercising personal jurisdiction over Defendant is consistent with traditional notions of fair play and substantial justice.

As noted above, the final inquiry is whether "the exercise of personal jurisdiction would 'offend traditional notions of fair play and substantial justice.'" *Dudnikov*, 514 F.3d at 1080

(quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Courts generally

consider a number of non-exclusive factors in connection with this inquiry, including:

> (1) the burden on the defendant, (2) the forum state's interests in resolving the
> dispute, (3) the plaintiff's interest in receiving convenient and effectual relief, (4)
> the interstate judicial system's interest in obtaining the most efficient resolution of
> controversies, and (5) the shared interest of the several states [or foreign nations]
> in furthering fundamental social policies.

*Id.*; *see also Kindig It Design*, 157 F. Supp. 3d 1167, 1180 (D. Utah 2016). Once minimum

contacts are established, "it is incumbent on defendants to 'present a compelling case that the

presence of some other considerations would render jurisdiction unreasonable.'" *Id.* (quoting *Pro

Axess, Inc. v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1280 (10th Cir. 2005)). Defendant has

presented no such case.

Any burden for Defendant to litigate this case in Utah is minimal and is limited to the fact

that Defendant is an out-of-state entity. Further, as the court determined in *Kindig It Design*,

"[i]n the modern world of air transportation and digital communication, the court has no

difficulty in finding that litigating in Utah will not create so substantial a burden on [the

defendant] as to violate Due Process." *Kindig It Design*, 157 F. Supp. 3d at 1180. As evidence of

this truth, Defendant has been litigating this case for well over a year without concern for burden.

The second factor also shows that due process is not violated because Utah has a

significant interest in protecting its residents from tortious behavior of the nature at issue in this

case.

Factors three, four, and five support the exercise of jurisdiction because Plaintiff has a

strong interest in obtaining relief in this location, where it operates and where it is suffering acute

injury. The interstate judicial system likewise has an interest in efficiently resolving this dispute

and thereby promoting justice, which can be accomplished in this forum without delay.

Exercising personal jurisdiction over Defendant will not offend traditional notions of fair play and substantial justice, particularly because minimum contacts have been established, and Defendant's contact with Utah shows it reasonably should expect to be haled into court in this jurisdiction. Accordingly, the Court should deny the motion to dismiss for lack of jurisdiction.

IV.     ALTERNATIVELY PLAINTIFF HAS INSUFFICIENT EVIDENCE TO RESPOND TO THE SUBSTANTIVE JURISDICTION CHALLENGE.

*Arguendo,* as noted in Plaintiff's *Notice of Insufficiency of Evidence and Motion for Jurisdictional Discovery* (Doc 74), which arguments are incorporated herein, if this Court determines that Defendant has not waived its right to challenge personal jurisdiction, or that the arguments and evidence herein are insufficient to establish a prima facie case for personal jurisdiction, Plaintiff respectfully requests that this Court rule on its *Motion for Jurisdictional Discovery*, and allow it to conduct limited jurisdictional discovery so as to more thoroughly address the substantive issue of minimum contacts.

**Conclusion**

Based on the foregoing, this Court should deny the *Motion to Dismiss*.

DATED this 18th day of June 2025.

CAMERON RINGWOOD, LC


/s/ Jordan K. Cameron
Jordan K. Cameron

**Certificate of Service**

I, the undesigned, certify that on this 18th day of June 2025, I caused a true and correct copy of the foregoing to be served via ECF filing on the following:

Richard A. Kaplan
YOUNG HOFFMAN, LLC
175 South Main Street, Suite 850
Salt Lake City, UT 84111
Telephone: 801-359-1900
Email: rkaplan@yahlaw.com
*Attorneys for Swift Innovations, LLC*